**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

BROIDY CAPITAL MANAGEMENT, LLC and
ELLIOTT BROIDY,

                              Plaintiffs,

                v.

NICOLAS D. MUZIN, JOSEPH ALLAHAM,
GREGORY HOWARD, STONINGTON
STRATEGIES, LLC,

                           Defendants.

                v.

ROBIN ROSENZWEIG and JOEL MOWBRAY,

                       Respondents.

Case No.: 1:22-mc-00031-DLF

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL NON-PARTY
RESPONDENTS ROBIN ROSENZWEIG AND JOEL MOWBRAY'S COMPLIANCE
WITH RULE 45 SUBPOENAS**

Dated: March 24, 2022

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT PROCEDURAL BACKGROUND ...................................................... 3

I.  This Action Concerns Defendants' Participation In A Conspiracy To Hack Plaintiffs' Servers ........................................................................................................... 3

II.  Muzin Consents To An Extension Of Mowbray And Rosenzweig's Time To Respond To Subpoenas .............................................................................................. 4

LEGAL STANDARD ............................................................................................. 6

ARGUMENT ......................................................................................................... 7

I.  Mowbray And Rosenzweig Did Not Waive Their Objections .......................... 7

    A.  Mowbray and Rosenzweig's Objections To The Subpoenas Were Timely .......... 7

    B.  Even If Circinus' Objections To The Muzin Subpoena Had Been Untimely, There Is Good Cause To Consider Them ............................................................... 9

    C.  Mowbray And Rosenzweig's Objections Are Specific And Tailored, And Muzin Knows The Bases Of Those Objections .................................................. 11

II.  Mowbray And Rosenzweig Did Not Limit Improperly The Scope Of Documents They Are Willing To Produce .......................................................................... 13

III.  The Court Should Deny The Motion For The Same Reasons The Other Pending Discovery Motions Should Be Decided In Plaintiffs' Favor ............................ 17

    A.  Discovery From Mowbray and Rosenzweig  Concerning Mr. Broidy's Purported Advocacy Is Irrelevant ...................................................................... 18

    B.  Muzin's Requests Are Not Relevant To Plaintiffs' Damages ............................ 23

    C.  Documents Dated Prior To December 1, 2017 Are Not Relevant ....................... 25

CONCLUSION ...................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*A&F Bah., LLC v. World Venture Grp., Inc.*,
    No. 17-CV-8523, 2018 WL 5961297 (C.D. Cal. Oct. 19, 2018)............................................12

*Alderson v. United States*,
    718 F. Supp. 2d 1186 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 9th Cir. 2012 ...........................20

*Alexander v. Chapnick*,
    No. 05-1300-T/AN, 2007 WL 9706308 (W.D. Tenn. Jan. 17, 2007).....................................21

*Arroyo v. Cervantes*,
    No. 8:19-00182 AG (ADS), 2019 WL 8755115 (C.D. Cal. Aug. 16, 2019)..........................13

*Baykeeper v. Kramer Metals, Inc.*,
    No. 07-CV-3849, 2009 WL 10671577 (C.D. Cal. Feb. 27, 2009) .........................................12

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
    No. 16-MC-80076-JSC, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) ...................................7

*Burlodge Ltd. v. Standex Int'l Corp.*,
    257 F.R.D. 12 (D.D.C. 2009)................................................................................................25

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 14-CV-251-SC, 2015 WL 12952688 (N.D. Cal. Jan. 16, 2015).....................................14

*Clark v. City of Los Angeles*,
    No. CV2010768CASPVC, 2021 WL 4731353 (C.D. Cal. Aug. 23, 2021)...............................9

*Colaco v. ASIC Advantage Simplified Pension Plan*,
    301 F.R.D. 431 (N.D. Cal. 2014).....................................................................................6, 17

*Convertino v. U.S. Dept. of Justice*,
    565 F. Supp. 2d 10 (D.D.C. 2008) .......................................................................................11

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) .................................................................................................7

*Dickerson v. District of Columbia*,
    No. 09-CV-2213, 2019 WL 6910043 (D.D.C. Dec. 19, 2019).............................................25

*Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*,
    200 F.R.D. 255 (M.D.N.C. 2001) ........................................................................................11

*F.T.C. v. Bisaro*,
    No. 10-MC-289 CKK AK, 2010 WL 3260042 (D.D.C. July 13, 2010)...................................7

*GFL Advantage Fund, Ltd. v. Colkitt*,
216 F.R.D. 189 (D.D.C. 2003) ................................................................................7

*Givens v. Criswell*,
No. CIV.A. 5:08CV25, 2009 WL 3672068 (N.D. W. Va. Oct. 29, 2009) .............................24

*Goodman v. Genworth Fin. Wealth Mgmt.*,
881 F. Supp. 2d 347 (E.D.N.Y. 2012) .............................................................20

*Green Payment Sols., LLC v. First Data Corp.*,
No. 18-CV-1463, 2018 WL 6333696 (C.D. Cal. Oct. 30, 2018) ..........................12

*Herbert v. Lando*,
441 U.S. 153 (1979) ..............................................................................7

*Hewett v. Triple Point Tech.*,
No. 3:13-CV-1382 (SRU), 2015 WL 6675529 (D. Conn. Oct. 30, 2015) ..........................24

*Hood v. Fiberweb, Inc.*,
No. 3-10-0355, 2010 WL 4102219 (M.D. Tenn. Oct. 18, 2010) ..........................21

*Interior Elec. Inc. Nevada v. Beverly*,
No. 20 MC 24, 2020 WL 8457486 (C.D. Cal. Dec. 7, 2020) ..................................8

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
No. 17 Civ. 7639, 2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) ..........................8

*Kannan v. Apple Inc.*,
No. 17CV07305EJDVKD, 2019 WL 5589000 (N.D. Cal. Oct. 30, 2019) .............13, 15, 16

*Krieger v. Fadely*,
199 F.R.D. 10 (D.D.C 2001) ......................................................................7, 19

*Leader Techs., Inc. v. Facebook, Inc.*,
No. C1080028MISCJWHRL, 2010 WL 761296 (N.D. Cal. Mar. 2, 2010) ..........................10

*Liberato v. Armor Corr. Health Servs., Inc.*,
No. 3:19CV00042, 2020 WL 2564681 (W.D. Va. May 20, 2020) ..........................10

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ......................................................................10

*Mims v. B&J Martin, Inc.*,
No. CV 17-07324, 2018 WL 1064411 (E.D. La. Feb. 25, 2018) ..........................23

*Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.*,
No. 07-CV-861, 2009 WL 10719757 (D.D.C. July 13, 2009) ..........................25

*Nidec Corp. v. Victor Co.*,
  249 F.R.D. 575 (D.D.C. 2007) ............................................................. 27

*Nuccio v. KFC Nat. Mgmt. Co.*,
  No. 95-cv-2586, 1996 WL 137637 (E.D. La. Mar. 25, 1996) ................................ 21

*Omnicare, Inc. v. R & W Delivery, LLC*,
  No. 21 MC 00075, 2021 WL 4776695 (C.D. Cal. Mar. 15, 2021) .......................... 8

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................... 7, 24

*Pietrangelo v. Refresh Club, Inc.*
  18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31, 2021) ............................ 14, 23

*Poturich v. Allstate Ins. Co.*,
  No. 15 Civ. 0081, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) ........................ 8

*Precision Pipeline, LLC v. Dominion Transmission, Inc.*,
  No. 16 Civ. 00180, 2018 WL 3744018 (E.D. Va. Aug. 7, 2018) .......................... 8

*Pure Aqua, Inc. v. Envitec Corp.*,
  No. 12 Civ. 01936, 2013 WL 12114610 (C.D. Cal. Oct. 25, 2013) ...................... 8

*ReBath LLC v. HD Sols. LLC*,
  No. CV-19-04873-PHX-JJT, 2021 WL 1923759 (D. Ariz. May 13, 2021) ............ 25

*Rendon Grp., Inc. v. Rigsby*,
  268 F.R.D. 124 (D.D.C. 2010) ............................................................. 7, 19

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ............................................................ 8

*Robinson v. Adams*,
  No. 08 Civ. 01380, 2010 WL 1948252 (E.D. Cal. May 11, 2010) ................ 6, 18, 24

*Rucker v. Air Ventures Hawaii*, LLC,
  No. CV 16-00492 HG-KSC, 2017 WL 4158201 (D. Haw. Sept. 19, 2017) ........... 10

*Sabol v. Brooks*,
  469 F. Supp. 2d 324 (D. Md. 2006) ................................................... 12

*Sec. & Exch. Comm'n v. Premier Holding Corp.*,
  No. 8:18-CV-00813, 2021 WL 6104308 (C.D. Cal. Sept. 7, 2021) ...................... 12

*Shacar v. Trans Union LLC*,
  No. 20 Civ. 11115, 2021 WL 6496405 (C.D. Cal. Sept. 22, 2021) ............... 9, 10, 12

*Siva Enterprises v. Ott*,
    No. 218CV06881CASGJSX, 2018 WL 6844714 (C.D. Cal. Nov. 5, 2018) ..........................20

*Strategic Partners, Inc. v. FIGS, Inc.*,
    No. CV 19-2286-GW (KSX), 2021 WL 4813646 (C.D. Cal. Aug. 12, 2021) .................15, 23

*Table de Fr. v. DBC Corp.*,
    No. EDCV 19-423-JGB, 2019 WL 6888043 (C.D. Cal. Aug. 1, 2019) .................................12

*Thong v. Andre Chreky Salon*,
    247 F.R.D. 193 (D.D.C. 2008) ..........................................................................................21

*Williams v. Big Picture Loans, LLC*,
    303 F. Supp. 3d 434 (E.D. Va. 2018) .................................................................................8

*Younes v. 7-Eleven, Inc.*,
    312 F.R.D. 692 (D.N.J. 2015) .............................................................................................8

*Yousuf v. Samantar*,
    451 F.3d 248 (D.C. Cir. 2006) ............................................................................................9

**Statutes & Rules**

L.R. 37-1 ...................................................................................................................................13

Fed. R. Civ. P. 26(b)(1)...............................................................................................................7

Fed R. Civ. P. 45 .......................................................................................................................10

Non-party respondents Joel Mowbray and Robin Rosenzweig respectfully submit this memorandum of law in opposition to the motion to compel ("Muzin Mem.") their compliance with subpoenas filed by Nicolas Muzin and Stonington Strategies LLC (together, "Muzin").

## PRELIMINARY STATEMENT

Defendants Nicolas Muzin and Stonington Strategies LLC, two of the defendants in the underlying action, engaged in an illegal scheme to hack and disseminate confidential personal and business information belonging to Plaintiffs Elliott Broidy and his investment company, Broidy Capital Management, LLC (together, "Plaintiffs") — a scheme funded by the State of Qatar to punish and silence Broidy, an American citizen exercising his First Amendment rights to criticize and bring to the public's attention Qatar's support for and funding of terrorism and terrorist groups. This Court, on Defendants' motions to dismiss, upheld Plaintiffs' statutory and common law claims arising from the illegal scheme. Accordingly, discovery will almost exclusively be focused on Defendants' conduct and their relationship with Qatar.

Without any legitimate defenses, Defendants' litigation strategy has been to try and block perhaps the most relevant discovery in the case — material and information exchanged with Qatar or with other Qatari agents — while insisting on expansive and harassing discovery of any nonparties associated with Broidy, then accusing those nonparties of criminality for refusing to produce irrelevant discovery to obscure their own indefensible discovery positions. Indeed, Muzin has not produced a single document to date. The subjects of Muzin's subpoenas at issue here — Robin Rosenzweig, Elliot Brody's wife, and Joel Mowbray, one of Mr. Broidy's lawyers — are the primary focus of Muzin's nonparty discovery and public relations strategy. The invasive discovery Muzin seeks here is irrelevant to any claim or legitimate defense and as such, his motion should be denied.

The operative complaint alleges that Ms. Rosenzweig was the first victim of the conspiracy, when, shortly after the hacking efforts launched in late December 2017, she fell prey to a phishing email, through which Defendants gained access to her Gmail account and ultimately Plaintiffs' servers.  That is the extent of Ms. Rosenzweig's role in the complaint, and Ms. Rosenzweig has agreed to produce documents and communications concerning the hacking of her Gmail account going back to the beginning of December 2017.  As for Mr. Mowbray, he is alleged to have had three in-person meetings with Muzin in which Muzin all but admitted to his role in the conspiracy when he said, "I was doing my job" on behalf of Qatar — and he was also the target of an unsuccessful attempt to hack his Gmail account.  Mr. Mowbray has likewise agreed to produce those non-privileged responsive documents related to his role as a target of the conspiracy.

In his motion, Muzin has not come close to meeting his burden to show that each of the 108 requests are within the bounds of permissible discovery.  Rather, Muzin lumps the 108 requests into two broad categories — *i.e.*, those purportedly concerning "damages" and Mr. Broidy's supposed "illicit activity" — and, with few exceptions, does not set forth the requests in full.  This is not surprising because the subpoenas seek overtly irrelevant information.  Requests from Mowbray and Rosenzweig, such as "[a]ll bank statements for personal and business accounts" over a six-year period make clear that Muzin does not seek documents related to any claim or defense in the case.  Even a cursory review of the subpoenas leaves no doubt that the subpoenas contain scores of totally objectionable requests and are merely intended to harass these nonparties because they are closely associated with Mr. Broidy.

In fact, Muzin forewarned Mr. Mowbray in 2018 that Qatar was "going to go after you" and threatened that a subpoena issued to him bankrupt him by putting Mr. Mowbray into "a multi-million dollar hole."  Fast forward four years and that is exactly what Muzin is attempting to do

with his subpoenas, which seek "[a]ll documents and communications" concerning blatantly irrelevant topics that have been addressed at length in related discovery motions (the "Irrelevant Topics"). The Irrelevant Topics are entirely unrelated to the claims or defenses at issue here, not proportional to the needs of the case, and harassing. Mowbray and Rosenzweig properly objected to the Irrelevant Topics.

As set forth below (and in Plaintiffs' motion seeking, *inter alia*, a protective order and to quash various subpoenas (ECF No. 118); opposition to Defendants' motion to compel (ECF No. 120); and Circinus, LLC's ("Circinus") opposition to Muzin's motion to compel (*Broidy Capital Management, LLC v. Muzin et al.*, 22-mc-00030-DLF (D.D.C.) (the "Circinus Proceeding"), ECF No. 21) (collectively, the "Discovery Motions")), Muzin's motion to compel should be denied.

## RELEVANT PROCEDURAL BACKGROUND

### I.    This Action Concerns Defendants' Participation In A Conspiracy To Hack Plaintiffs' Servers

The operative complaint ("Complaint," or "FAC") in the underlying action ("Underlying Action") against Muzin, Gregory Howard, and Joseph Allaham (together, "Defendants") alleges that Ms. Rosenzweig was the first target of the hacking conspiracy. FAC ¶¶ 86-90. Specifically, on or about December 27, 2017, Defendants' Qatari-funded co-conspirators initiated hacking efforts targeting Ms. Rosenzweig's Gmail account through the use of a "spear phishing" email, which was designed to, and ultimately did, allow the conspirators to gain unlawful access to all of Ms. Rosenzweig's Google-related accounts. FAC ¶¶ 88-89. Those accounts contained, among other things, passwords to access the computer network of Plaintiff Broidy Capital Management, LLC. *Id*. Defendants and other co-conspirators then disseminated Plaintiffs' documents to various media outlets for publication. *Id*. ¶¶ 112-14.

The Complaint also alleges that Muzin had three in-person meetings in Washington, D.C. with Mr. Mowbray — one in February 2018 and two in March 2018 — in which Muzin all but admitted his involvement in the hacking conspiracy, claiming that he was "doing his job" on behalf of Qatar.  FAC ¶¶ 75, 145, 171-187.

Defendants moved to dismiss the Complaint, and on March 31, 2020, the Court allowed the following claims to proceed: (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) violation of the Defend Trade Secrets Act ("DTSA"); (3) violation of the California Uniform Trade Secrets Act ("CUTSA"); (4) receipt and possession of stolen property; (5) intrusion upon seclusion; and (6) civil conspiracy.  Accordingly, the relevant discovery in this case focuses almost exclusively on Defendants' conduct and their relationship with Qatar and other co-conspirators.

## II.     Muzin Consents To An Extension Of Mowbray And Rosenzweig's Time To Respond To Subpoenas

Upon request by Muzin's counsel, just before the holidays on December 22, 2022, counsel for Plaintiffs agreed to accept service of subpoenas on behalf of Ms. Rosenzweig (the "Rosenzweig Subpoena") and Mr. Mowbray (the "Mowbray Subpoena"), and in that same email chain, Plaintiffs granted Defendants' request for an extension of time to oppose a motion for reconsideration due to the holidays.  HBB Decl., Ex. 1.[1]  The date of compliance of each subpoena was January 10, 2022.  HBB Decl. Exs. 2, 3.

The Mowbray Subpoena seeks an astonishing *82 categories* of documents that were nearly identical to those Defendants sought from Plaintiffs, including seeking discovery concerning the Irrelevant Topics starting in January 1, 2016.  *See* HBB Decl., Ex. 4.  Not only does Muzin seek irrelevant documents about Plaintiffs, but also "[a]ll documents and communications" about Mr.

---

[1] "HBB Decl., Ex. _" refers to exhibits attached to the Declaration of Henry B. Brownstein, dated March 24, 2022.

Mowbray personally that have no conceivable relevance to any claim or defense, including but not limited to:

- All documents and communications regarding payments, donations, gifts, grants, disbursements, or contributions . . . received by or made by You . . . in relation to any federal political campaign. *Id.*, Req. No. 60.

- All bank statements for personal and business accounts belonging to You between January 1, 2016, and the present. *Id.*, Req. No. 69.

- Documents sufficient to show your call history from January 1, 2016, to the present for any personal or business phone numbers utilized by you, including without limitation each of your mobile devices. *Id.*, Ex. 4, Req. No. 71.

The Rosenzweig Subpoena seeks ***26 categories*** of documents that likewise seek documents identical to those Defendants sought from Plaintiffs, including seeking discovery concerning the Irrelevant Topics, and personal information about her, including but not limited to:

- All documents and communications regarding payments, distributions, donations, or disbursements that You made on behalf of or received from Broidy. HBB Decl., Ex. 5, Req. No. 19.

- Documents sufficient to show your call history from January 1, 2016, to the present for any personal or business phone numbers utilized by you, including without limitation each of your mobile devices. *Id.*, Req. No. 23.

On January 7, 2022 — *i.e.*, three days before the compliance date of the subpoenas, undersigned counsel requested a short extension of time — until Friday, January 14 — to respond to the subpoenas, and thanked Muzin's counsel "in advance for [their] professional courtesy." HBB Decl., Ex. 6.   On January 10, 2022, Muzin's counsel "agree[d] to extend the deadline to respond until Friday, January 14." HBB Decl., Ex. 7.

On January 14, 2022, Mowbray and Rosenzweig timely served their responses, and, consistent with Plaintiffs' responses to Defendants' discovery requests, objected to discovery with respect to the Irrelevant Topics, and did not agree to search for or produce documents prior to December 1, 2017.  HBB Decl., Exs 4, 5.  However, both Mowbray and Rosenzweig agreed to

produce documents responsive to 26 of the requests.  *See* Appendix A-1.  For example, Ms. Rosenzweig agreed to produce such documents responsive Request No. 6 ("All documents and communications stored that were made public as a result of the alleged hacking."), Request No. 7 ("All documents and communications that were obtained as a result of the alleged hacking."), and Request No. 15 ("All communications with any person regarding the Defendants, as well as any documents relating to such communications.").   Mr. Mowbray likewise agreed to produce documents responsive Request No. 1 ("All communications between You and Defendants"), Request No. 5 ("All communications regarding the alleged hacking"), and Request No. 8 ("All documents and communications regarding any attempt to hack or access Your computer, computer systems, network, or email accounts without authorization.").

 Six days after receiving the responses, on January 20, 2022, Muzin's counsel informed Mowbray and Rosenzweig that they deemed their objections untimely, and therefore claimed that that they were waived.  HBB Decl., Ex. 8.  Prior to filing the motion, however, counsel for the Muzin never met and conferred to discuss the substance of Mowbray and Rosenzweig's objections to the subpoenas.  HBB Decl. ¶ 11.

## **LEGAL STANDARD**

The movant has the initial burden to "establish[] that the information requested [is] within the scope of permissible discovery."  *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014).   That burden requires the movant to make particularized arguments demonstrating that each request is justified.  *See Robinson v. Adams*, No. 08 Civ. 01380, 2010 WL 1948252, at *3 (E.D. Cal. May 11, 2010) (denying motion to compel with respect to each request plaintiff failed to specifically identify and raise particularized arguments that demonstrate why defendants' response was unjustified).

Rule 26(b)(1) dictates that scope of permissible discovery is that which is "relevant to the claim or defense of any party and proportional to the needs of the case." *See also GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003) (holding that the substantive nature of the claims asserted is what defines relevancy under Rule 26(b)(1)); *Krieger v. Fadely*, 199 F.R.D. 10, 13 (D.D.C 2001) (same). "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

On the other hand, discovery should be denied "when a party's aim is to . . . harass the person from whom he seeks discovery," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978), a policy that is more true for discovery sought from third parties, *see Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649-50 (9th Cir. 1980); *see also Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339; *Rendon Grp., Inc. v. Rigsby*, 268 F.R.D. 124, 127 (D.D.C. 2010) ("[T]here should be a greater sensitivity to the potential burden that will be imposed on a third party."). When subpoenas are issued for an improper purpose or in bad faith, sanctions may be appropriate. *See Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2016 WL 7212308, at *3 (N.D. Cal. Dec. 13, 2016); *F.T.C. v. Bisaro*, No. 10-MC-289 CKK AK, 2010 WL 3260042, at *5 (D.D.C. July 13, 2010).

## ARGUMENT

### I.    Mowbray And Rosenzweig Did Not Waive Their Objections

#### A.  Mowbray and Rosenzweig's Objections To The Subpoenas Were Timely

Rosenzweig and Mowbray's responses were timely for the exact same reasons discussed in Circinus' opposition to Muzin's motion to compel. *See* Circinus Proceeding, ECF No. 21 at 5-7. In sum, counsel's request for an extension of time to "respond" to the subpoena obviously included "objections" under any good faith understanding of such request, and Muzin's counsel accepted that request. HBB Decl., Ex. 7 ("we agree to extend the deadline to respond"). Thus,

Rosenzweig and Mowbray timely served their objections when those were served on January 14, 2022.

Muzin's position is that by seeking additional time to "respond," Muzin's counsel purportedly understood that Rosenzweig and Mobray had requested an extension *only* of the "return date" to produce documents as opposed to "respond and object."[2]  Muzin Mem. at 7.  That is simply not credible.  Written responses and objections are commonly referred to as "responses" as shorthand, and "discovery is not a 'gotcha' game."  *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 708 (D.N.J. 2015) (citation omitted).  *See also Precision Pipeline, LLC v. Dominion Transmission, Inc.*, No. 16 Civ. 00180, 2018 WL 3744018, at *9 (E.D. Va. Aug. 7, 2018) (rejecting "'Gotcha!'" argument based on a typographical error); Circinus Proceeding, ECF No. at 5-7.[3]

---

[2] Muzin misstates (Muzin Mem. at 7-8) the holding of *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 17 Civ. 7639, 2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) to suggest that a request for an extension to respond and object must say so in those precise words.  *Id.* at *4.  *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434 (E.D. Va. 2018) is similarly inapposite.  There, the court found that the "parties' communications do not indicate that the extension of the *production date* was also intended to apply to [] objections."  *Id*. at 442 (emphasis added).  Here, Mowbray and Rosensweig's request to extend the time to "respond" was clearly in reference to the time to respond and object, not the "production date."

[3] Muzin's waiver argument (Muzin Mem. at 7) is otherwise based on inapposite law.  In *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), *Omnicare, Inc. v. R & W Delivery, LLC*, No. 21 MC 00075, 2021 WL 4776695, at *2 (C.D. Cal. Mar. 15, 2021), *Poturich v. Allstate Ins. Co.*, No. 15 Civ. 0081, 2015 WL 12766048, at *1 (C.D. Cal. Aug. 11, 2015), and *Interior Elec. Inc. Nevada v. Beverly*, No. 20 MC 24, 2020 WL 8457486, at *1-2 (C.D. Cal. Dec. 7, 2020), the party opposing discovery **never served responses** of any sort and never requested an extension of time to respond.  Moreover, the Ninth Circuit in *Richmark Corp*., *supra*, still considered the third party's objections notwithstanding its failure to serve written responses and objections, and in *Poturich v. Allstate Ins. Co.*, No. EDCV150081GWKKX, 2015 WL 12766048, at *1 (C.D. Cal. Aug. 11, 2015), the subpoenaing party declared that the third party waived its objection only after the time for *compliance* had passed.  *Pure Aqua, Inc. v. Envitec Corp.*, No. 12 Civ. 01936, 2013 WL 12114610, at *1 (C.D. Cal. Oct. 25, 2013) is even farther afield.  There, the defendant sought an *ex parte* application compelling plaintiffs to meet and confer concerning a motion to quash four third-party subpoenas, and there was no evidence that the subpoenaed parties ever served written responses.

**B. Even If Circinus' Objections To The Muzin Subpoena Had Been Untimely, There Is Good Cause To Consider Them**

Even assuming, *arguendo*, that the objections were untimely (they were not), courts may consider untimely objections to a subpoena for good cause. *See Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006). In assessing good cause, courts consider whether, among other things, "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) counsel for the witness was in contact with counsel for the party issuing the subpoena prior to filing its formal objection." *Id*. California federal courts similarly consider "(1) the length of delay, (2) the reason for delay, (3) the existence of bad faith, (4) the prejudice to the party seeking waiver, (5) the nature of the request, and (6) the harshness of imposing sanctions." *Shacar v. Trans Union LLC*, No. 20 Civ. 11115, 2021 WL 6496405, at *3 (C.D. Cal. Sept. 22, 2021) (quoting *S.P. v. Cty. of San Bernardino*, No. 19 Civ. 897, 2020 WL 4335375, at *3 (C.D. Cal. May 13, 2020)). Good cause exists here for the same reasons stated in Circinus' opposition to Muzin's motion to compel Circinus. Circinus Proceeding, ECF No. 21 at 7-12.

The subpoenas are facially overbroad considering they seek "[a]ll documents and communications" over a six-year period relating to *108 categories* of mostly irrelevant requests, including, for example, all of Mr. Mowbray's bank statements (HBB Ex. 4, Req. No. 69), and six years of each of Mowbray and Rosenzweig's call histories of any personal or business nature (HBB Ex. 4, Req. No. 71; HBB Ex. 5, Req. No. 23). These and other requests have no relevance whatsoever to the claims and valid defenses in the case. *See Clark v. City of Los Angeles*, No. CV2010768CASPVC, 2021 WL 4731353, at *12 (C.D. Cal. Aug. 23, 2021) (denying motion to compel responses that were "patently overbroad" and "not tied to the allegations contained in the complaint"). In fact, they are so far out of bounds of permissible discovery that one can only

conclude that Muzin is abusing discovery to further a vendetta against Mowbray and Rosenzweig. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) ("abusively drawn" subpoenas properly quashed where subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information."); *Rucker v. Air Ventures Hawaii*, LLC, No. CV 16-00492 HG-KSC, 2017 WL 4158201, at *2 (D. Haw. Sept. 19, 2017) (subpoenas seeking three years of bank records were for an improper purpose).

Mowbray and Rosenzweig acted in good faith by voluntarily accepting service of the subpoenas over the holidays as a courtesy, and counsel was in contact with Muzin prior to the time of compliance and specifically requested a brief extension of time to respond to it. *See Shacar*, 2021 WL 6496405, at *3 (no bad faith where plaintiff acted promptly upon receiving notice that his responses were late in requesting an extension from defendant and providing discovery responses within three days of notice); *Leader Techs., Inc. v. Facebook, Inc.*, No. C1080028MISCJWHRL, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2, 2010) (no waiver found "where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena").

Muzin has not suffered prejudice. Mowbray and Rosenzweig's request for a short extension of time to respond was made within the time of compliance and only two days after the fourteen days provided for under Rule 45. *See Shacar*, 2021 WL 6496405, at *3 (no prejudice where responses received a week after they were due); *Liberato v. Armor Corr. Health Servs., Inc.*, No. 3:19CV00042, 2020 WL 2564681, at *3 (W.D. Va. May 20, 2020) (no prejudice where service of objections was within the time for compliance, and only six days after the fourteen days required by Rule 45). Moreover, Mowbray and Rosenzweig's January 14 service of their responses has not impacted Muzin at all. Muzin has not produced documents in this action, and Muzin most certainly

10

knew Mowbray and Rosenzweig would object as they did because Defendants propounded nearly identical discovery on Plaintiffs, who by then had already served responses to discovery asserting similar if not identical objections.   Additionally, counsel for the parties had ongoing correspondence regarding the scope of discovery.   *See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001) (no waiver where "Plaintiffs have not been substantially hindered or delayed as a result of defendants' initial failure to set out the privilege objection in the discovery responses").

Finally, finding waiver to 108 requests where the scope of identical discovery is hotly contested in the Underlying Action is particularly harsh.

Consideration of these facts demonstrates that Mowbray and Rosenzweig have shown good cause for the Court to consider the purportedly untimely objections.

### C.  Mowbray And Rosenzweig's Objections Are Specific And Tailored, And Muzin Knows The Bases Of Those Objections

Muzin asserts (Muzin Mem. at 8-10) that Mowbray and Rosenzweig have waived their objections because their specific objections are purportedly boilerplate and unsupported.   This is a disingenuous argument, considering that, as shown in the Circinus Proceeding (ECF No. 21 at 10), Muzin's own objections to Plaintiffs' discovery requests are materially identical to those asserted by Mowbray and Rosenzweig, and Muzin did not submit any affidavits supporting his objections.

In any event, Mowbray and Rosenzweig's objections are specific.   The specificity requirement exists to "enable[] the requesting party to evaluate and determine whether to challenge the objection raised," *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008), and Muzin does not claim that he cannot evaluate and determine whether to challenge the objection raised.   Nor could he.   Muzin knows full well the bases for those objections given that, among

other things, counsel for the parties have been discussing the proper scope of discovery in connection with party discovery since as early as January 12, 2022, and that the bases are set forth at length in the Discovery Motions.[4]   *See* Underlying Action, ECF Nos. 118.02, 120; Circinus Proceeding, ECF No. 21.   It is telling that Muzin has not suggested how a relevance objection to requests like a nonparty's bank statements, donation history, and travel itineraries for the last six years in a computer hacking case (HBB Decl., Ex. 4, Req. Nos. 69, 19, 79) be more specific. Muzin's chief argument (Muzin Mem. at 9-10) appears to be that Mowbray and Rosenzweig asserted similar objections to the majority of the requests.  But the reason for the number of similar objections lies in Muzin's requests, which are overtly objectionable for the same reasons, not how Mowbray or Rosenzweig responded to them.

Moreover, courts will not find waiver when the requests for documents are, like here, "so overbroad on [their] face that wholesale waiver would be unfair."  *Sabol v. Brooks*, 469 F. Supp. 2d 324, 329 (D. Md. 2006); *see also Shacar*, 2021 WL 6496405, at *3.   In a case that concerns Defendants' participation in a conspiracy to hack Plaintiffs' servers and disseminate hacked materials to the media, the bases for nonparties Mowbray and Rosenzweig's objections on the grounds of relevance, proportionality and privilege are obvious.  Indeed, "all communications" for

---

[4] The cases Muzin cites (Muzin Mem. at 8-9) are inapposite.  *See A&F Bah., LLC v. World Venture Grp., Inc.*, No. 17-CV-8523, 2018 WL 5961297, at *4 (C.D. Cal. Oct. 19, 2018) (addressing post-judgment discovery, which is "very broad," and finding that request was not overbroad); *Baykeeper v. Kramer Metals, Inc.*, No. 07-CV-3849, 2009 WL 10671577, at *2 (C.D. Cal. Feb. 27, 2009) (finding that, in contrast to the present case, the plaintiff was denied the opportunity to challenge the defendant's belated objection); *Green Payment Sols., LLC v. First Data Corp.*, No. 18-CV-1463, 2018 WL 6333696, at *2 (C.D. Cal. Oct. 30, 2018) (addressing general objections in a Joint Stipulation); *Sec. & Exch. Comm'n v. Premier Holding Corp.*, No. 8:18-CV-00813, 2021 WL 6104308, at *2 (C.D. Cal. Sept. 7, 2021) (vague contention that each request is overbroad and unduly burdensome insufficient as court could not understand in what way the discovery requests were objectionable); *Table de Fr. v. DBC Corp.*, No. EDCV 19-423-JGB (KKx), 2019 WL 6888043, at *5 (C.D. Cal. Aug. 1, 2019) (dealing with an objecting party's "shotgun" style approach involving the same general medley of objections made to every single requests).

a six-year period concerning a particular topic necessarily includes privileged communications, and in particular communications between Ms. Rosenzweig and her spouse, which are not discoverable.  *See Kannan v. Apple Inc.*, No. 17CV07305EJDVKD, 2019 WL 5589000, at *3 (N.D. Cal. Oct. 30, 2019) (finding that "the marital communications privilege protects [] documents from discovery").

## II.   Mowbray And Rosenzweig Did Not Limit Improperly The Scope Of Documents They Are Willing To Produce

Muzin next complains (Muzin Mem. at 11-14) that Mowbray and Rosenzweig inappropriately limited their agreement to produce documents to only those documents "concerning the hacking" and in some cases purportedly refused to produce documents in response to requests Muzin disingenuously characterizes as regarding the hacking itself.  *See* Appendix A-2.  Muzin is incorrect.

Initially, Muzin's complaint that "there is no way to know what Circinus means by 'concerning the hacking'" is of his own making.  Muzin did not inquire as to the substance of any of Mowbray and Rosenzweig's objections prior to filing the motion, as he is required to do by rule. *See* C.D. Cal., L.R. 37-1 (it "is the responsibility of counsel for the moving party to arrange for" a meet-and-confer prior to the filing).  Muzin's failure to do so is fatal to his motion.  *See Arroyo v. Cervantes*, No. 8:19-00182 AG (ADS), 2019 WL 8755115, at *1 (C.D. Cal. Aug. 16, 2019) (denying motion to compel for failure to meet and confer under Rule 37-1).  Had Muzin bothered to ask, Muzin would have learned that Mowbray and Rosenzweig's agreement to produce documents "concerning the hacking" or "concerning the hacking of Rosenzweig's emails," as the case may be, includes documents not only concerning the hacking itself, but also the nature and

scope of the hacking conspiracy and the dissemination of the hacked materials, *i.e.*, all subject matter that is potentially relevant to the claims or valid defenses in this case.[5]

Muzin contends (Muzin Mem. at 12) that Mowbray's qualification will exclude relevant documents concerning BlueFort Public Relations LLC ("BlueFort") (Request No. 55), LA.Confidential@mail.com (Request No. 81), and GoDaddy.com (Request No. 82). But, given the allegations in the Complaint regarding BlueFort, LA.Confidential@mail.com and GoDaddy.com,[6] documents unrelated to the hacking or the related conspiracy are not relevant to any claim or defense.

Legitimate discovery is clearly not Muzin's goal, which he all but confirms in his justification for seeking documents concerning BlueFort but unrelated to the hacking conspiracy — *i.e.*, to "confirm what facts Broidy and his associates rely on in making their allegations." Muzin Mem. at 12. Paragraphs 161 through 163 of Complaint already provided the bases of Plaintiffs' allegation that BlueFort paid Muzin's firm and co-defendant Allaham $3.9 million as part of the hacking conspiracy, specifically Muzin's own FARA disclosures and media reports cited in the Complaint itself. *See* FAC ¶¶ 161-163.

---

[5] Muzin cites (Muzin Mem. at 11-12) *Pietrangelo v. Refresh Club, Inc.* 18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31, 2021) for the tired refrain that "the insertion of even 'one word' in a complaint can 'open a can of discovery worms.'" There, however, the "one word" in question was directly germane to a valid defense in the case. *Id.* at *9. Similarly, the discovery sought in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-251-SC, 2015 WL 12952688, at *2 (N.D. Cal. Jan. 16, 2015) to "rebut allegations" in the complaint was directly relevant to the antitrust issue in that case.

[6] BlueFort paid defendants Muzin and Allaham $3.9 million on behalf of Qatar during the relevant time period. FAC ¶¶ 161-163. LA.Confidential@mail.com is alleged to been registered by the conspirators on February 24, 2018, just days before Plaintiffs' hacked material started appearing in the media. FAC ¶ 113. GoDaddy LLC is alleged to have hosted a website that contained Plaintiffs hacked materials. FAC ¶ 114.

Likewise, Muzin's concern (Muzin Mem. at 13) that Ms. Rosenzweig is withholding discoverable documents by limiting her agreement to produce documents responsive to Request No. 15, which seeks all communications concerning Defendants, to those "concerning the hacking of Rosenzweig's email account" is unfounded.  If such communications do not concern the nature of the hacking conspiracy, it is not relevant to any claim or defense and otherwise not proportional to the needs of the case.  *See Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW (KSX), 2021 WL 4813646, at *14 (C.D. Cal. Aug. 12, 2021).  Further, any of her communications with Mr. Broidy are privileged and thus not discoverable.  *See Kannan*, No. 17CV07305EJDVKD, 2019 WL 5589000, at *3.

Muzin contends disingenuously that Request No. 15 seeks documents concerning paragraph 15 of the Complaint.  That is false.  Paragraph 15 alleges that "[t]he substantial money [Muzin] received from Qatar corrupted Muzin and Stonington Strategies, and he crossed the legal line from being a legitimate political operative working on behalf of a foreign government into becoming a member of a criminal enterprise and conspiracy."  FAC ¶ 15.  Discovery concerning *Muzin's* corruption and his motives for participating in the criminal conspiracy is in the exclusive possession of *Muzin* and his co-conspirators, not Ms. Rosenzweig.

Finally, Muzin argues (Muzin Mem. at 13-14) that Mowbray and Rosenzweig are improperly withholding documents responsive to six requests that Muzin characterizes as "regarding the hack itself."  Muzin is wrong for a host of reasons.

*First*, Rosenzweig Request No. 2 and Mowbray Request No. 6 does not relate to the hacking of Plaintiffs' severs at all.  Both requests seek documents that identify any person that Mowbray or Rosenzweig or their "staff, agents, or representatives — or an entity you are affiliated with — have employed, hired, utilized, or otherwise consulted with, whether personally or

professionally, for their ability to breach defenses or exploit weaknesses in computer systems or networks."  HBB Decl., Exs. 5, 4.  The Complaint specifically alleges, however, that Ankura Consulting Group LLC ("Akura") was retained to investigate the hacking of Ms. Rosenzweig's Gmail account (FAC ¶ 102), Muzin requested communications with Ankura about that hacking (HBB Decl. Ex. 5, Req. No. 1), and Ms, Rosenzweig has agreed to produce such non-privileged communications (*id*.).  Consequently, Muzin's disputed requests could only be seeking the identify of consultants Mowbray and Rosenzweig purportedly retained to hack *others*, which is totally irrelevant, and is a not so veiled effort to embark on a fishing expedition in support of Muzin's paranoia, expressed in one of Defendants' discovery briefs, that Broidy hacked the Qatar News Agency.  *See* Underlying Action, ECF No. 121 at 36 n.18.

*Second*, Rosenzweig Request No. 8 and No. 9 and Mowbray Request No. 13 seek documents regarding material they purportedly "contend" were forged.  HBB Decl., Exs. 5, 4.  Initially, these nonparties do not "contend" anything in this action.[7]  *Plaintiffs* contend that *their* documents were forged, and they have agreed to produce relevant documents.  Courts will deny motions to compel nonparty discovery when, as here, the discovery sought is "unreasonably cumulative or duplicative [and] obtainable from some other source that is more convenient, less burdensome, or less expensive."  *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339.  To the extent Ms. Rosenzweig communicated with her husband about his hacked information, those communications are privileged and not subject to discovery.  *See Kannan*, 2019 WL 5589000, at *3.

---

[7] Muzin attempts to justify (Muzin Mem. at 14 n. 3) other poorly phrased requests made of Mowbray and Rosenzweig that confusingly seek documents Mowbray and Rosenzweig that they purportedly "contend" support Plaintiffs' allegations or claims.  However, Mowbray and Rosenzweig's contentions are not at issue; Plaintiffs' contentions are, and they have agreed to produce documents that support their contentions.

*Finally*, Muzin mischaracterizes the record in arguing (Muzin Mem. at 14) that Mr. Mowbray refuses to produce documents regarding Mr. Mowbray's meetings with Muzin that are alleged in the Complaint.  Mr. Mowbray *agreed* to produce those documents in response to Request No. 1, which seeks [a]ll communications between You and Defendants, including . . . conversations between You and Muzin that occurred on or about February 27, 2018, March 5, 2018, and March 8, 2018."  HBB Decl., Exs. 4, Req. No. 1.  Request No. 2, which is the subject to Muzin's motion, impermissibly seeks all documents *about* those communications.[8]  Thus, Request No. 2 is ***not*** "limited to documents that specifically relate to the [] hacking," as Muzin contends.  Muzin Mem. at 14.

In sum, Muzin has not carried his burden to establish that information unrelated to the hacking conspiracy is relevant, *see Colaco*, 301 F.R.D. at 434, and Mowbray and Rosenzweig have otherwise properly limited their responses.

## III.   The Court Should Deny The Motion For The Same Reasons The Other Pending Discovery Motions Should Be Decided In Plaintiffs' Favor

Muzin argues that each of the 108 requests is discoverable because they purportedly relate to Broidy's advocacy and damages.  These are largely recycled arguments that the parties have briefed in the Discovery Motions.  For the same reasons the Court should reject Defendants' arguments in Discovery Motions, the Court should deny the motion to compel Mowbray and Rosenzweig.  Muzin's case for invasive discovery of Mowbray and Rosenzweig is even less compelling given that they are nonparties.

---

[8] *See* HBB Decl. Ex. 4, Req. No. 2 ("All documents and communications that discuss, transmit, attach, disclose, publish, share, or forward any audio or video recordings of conversations between You and Defendants, including without limitation conversations between You and Muzin that occurred on or about February 27, 2018, March 5, 2018, and March 8, 2018.")

### A.   Discovery From Mowbray and Rosenzweig Concerning Mr. Broidy's Purported Advocacy Is Irrelevant

Muzin characterizes 70 of his requests as relating to Mr. Broidy's purported advocacy efforts and then attempts to link that advocacy to one of six topics that Muzin contends is discoverable, *i.e.*, issues related to Mr. Broidy's (1) public image; (2) trade secrets; (3) motive for criticizing Qatar; (4) credibility; (5) other enemies who are the "real" hackers; and (6) motive for bringing the lawsuit.[9] *See* Muzin Mem. at 14-18; Appendix A-3.

Initially, Muzin fails to show with particularity that each of these 70 requests relate to Mr. Broidy's supposed "illicit activity" or even any of the six topics, which is reason alone to deny the motion. *See Robinson*, 2010 WL 1948252, at *3 (denying motion to compel with respect to each request plaintiff failed to specifically identify and raise particularized arguments that demonstrate why defendants' response was unjustified).  Rather, by lumping the 70 requests under one topic heading, and highlighting those in his brief that concern Mr. Broidy and Qatar, the UAE and Saudi Arabia only, Muzin gives the false impression that all 70 requests are similar or that they relate to Mr. Broidy's purported advocacy (which has not occurred and would be irrelevant anyway) and the six topics.

For example, three of the requests relate to Mr. Mowbray and the Palestinian International Terrorism Support Prevent Act (the "Hammas Sanctions Bill").  HBB Decl., Ex. 4, Req. Nos. 26-28.  Almost all of the 70 requests seek personal information regarding Mr. Mowbray or Ms. Rosenzweig (Appendix A-3, Entry Nos. 5-33, 35-70), such as any communications Mr. Mowbray

---

[9] Notably, Muzin does not claim, as he has claimed in the Discovery Motions, that the subpoenas seek discovery relevant to his unclean hands defense.  This is likely because after multiple rounds of briefing on the issue, Muzin has realized that none of these topics have a "direct nexus" to the claims in the case, as they must to support such a defense.  Underlying Action, ECF No. 118.02 at 20.

allegedly had with members of Congress or any of their staff regarding Qatar, the UAE, or Saudi Arabia (HBB Decl., Ex. 4, Req. No. 30), and any communications Ms. Rosenzweig allegedly had related to anyone working on behalf of the King of Saudi Arabia or the United Arab Emirates (*id.*, Ex. 5, Req. No. 12).  These requests targeting Mowbray and Rosenzweig do not concern any issue Muzin associates with Mr. Broidy.  As for the requests that seek discovery regarding Broidy's purported relationship with the UAE and Saudi Arabia or his criticism of Qatar's support for terrorism (Appendix A-3, Entry Nos. 2, 7-11, 28, 33-35, 43, 46, 47, 55, 58, 59, 61, 63, 64, 66, 67), Mowbray and Rosenzweig should not be burdened with those requests as nonparties.  *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339; *Rendon Grp., Inc. v. Rigsby*, 268 F.R.D. 124, 127 (D.D.C. 2010) ("[T]here should be a greater sensitivity to the potential burden that will be imposed on a third party.").

In any event, as shown in the Discovery Motions, Mr. Broidy's purported advocacy efforts against Qatar's terror sponsorship are irrelevant to the claims or valid defenses at issue in this case.  *See* Underlying Action, ECF No. 118.02 at 10-21, ECF No. 123 at 2-11.  "The substantive nature of the claim asserted defines relevancy."  *Krieger v. Fadley*, 199 F.R.D. 10, 13 (D.D.C. 2001).  The substantive claims here are for violations of CFAA, DTSA, CUTSA and for receipt of stolen property, intrusion upon seclusion, and civil conspiracy.  Muzin's conclusory bullet-point reasons for pursuing vast discovery purportedly related to Mr. Broidy's advocacy are meritless.

**Portraying Mr. Broidy In A False Light.**  Muzin first claims that this discovery will enable them to respond to Mr. Broidy's allegations that articles created a false and injurious image of him.  Muzin Mem. at 16.  But none of the elements of the claims require Plaintiffs to prove the falsity of the information that was stolen, or permit Defendants to disseminate stolen information as long as it is true.  *See* Underlying Action, ECF No. 118.02 at 10-11, 14-15; ECF No. 123 at 5.

**Mr. Broidy's Trade Secret Claims.**   Muzin next asserts that discovery into Mr. Broidy's advocacy would negate trade secret protection.   Muzin Mem. at 16.   But the trade secrets at issue do not relate to any purportedly "undisclosed" advocacy efforts that Muzin asserts were disclosed in the leaked emails or otherwise.   Thus, whether the "emails reflect unlawful lobbying" is irrelevant; it does not impact the status of Plaintiffs' trade secrets.[10]   *See Siva Enterprises v. Ott*, No. 218CV06881CASGJSX, 2018 WL 6844714, at *5 (C.D. Cal. Nov. 5, 2018) (violation of Controlled Substance Act did not remove trade secret protection over client list and information of plaintiff who provided consulting service for cannabis industry nationwide); Underlying Action, ECF No. 118.02 at 19-21; ECF No. 120 at 13; ECF No. 123 at 8-9.

**Mr. Broidy's Motive For Criticizing Qatar's Support of Terrorism.**   Mr. Broidy's criticism of Qatar is not relevant to any claim or defense, and Muzin is not entitled to *any* discovery into these efforts, let alone *all* such materials.   While Mr. Broidy's opposition to Qatar's support of terrorism is undoubtedly provides a motivation for Qatar and its agents to carry out the hacking, *Mr. Broidy's* motive is not an element of his claims, and Mr. Broidy's criticism of Qatar is not defense to the hacking and disseminate Plaintiffs' hacked materials.   The only motive relevant here is that of Defendants and their co-conspirators, which would necessarily be limited to what they knew or believed at the time they decided to target Plaintiffs.   As such, Muzin can obtain such information through discovery of his co-conspirators, not Mowbray or Rosenzweig.

**Mr. Broidy's Credibility.**   Latching on to a general proposition of law that issues of credibility are discoverable, Muzin asserts speciously he is entitled to discovery that would

---

[10] Muzin's cases (Muzin Mem. at 16) are not even cases about discovery.   Rather, they stand for the general proposition that information about illegal activities is not protected by trade secret law.   *See Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F. Supp. 2d 347, 355 (E.D.N.Y. 2012); *Alderson v. United States*, 718 F. Supp. 2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 9th Cir. 2012).

confirm "Broidy and his associates had engaged in widespread illicit lobbying on behalf of foreign sovereigns." Muzin Mem. at 18. Initially, Muzin does not attempt to explain how discovery of Mowbray and Rosenzweig is relevant to Mr. Broidy's credibility as a witness. In any event, courts will deny discovery into a witness's general credibility when, as here, it is unrelated to the claims. *See Alexander v. Chapnick*, No. 05-1300-T/AN, 2007 WL 9706308, at *2 (W.D. Tenn. Jan. 17, 2007) (rejecting argument that discovery to tax returns was relevant to party's general credibility where the "primary issue in this case is whether there was an enforceable contract"); *Hood v. Fiberweb, Inc.*, No. 3-10-0355, 2010 WL 4102219, at *3 (M.D. Tenn. Oct. 18, 2010) (quashing subpoena that sought discovery and distinguishing requests going to credibility issues that go to the "heart of the case," which is discoverable, with requests that seek information "only to impeach the plaintiff's credibility on a tangential issue"); *Nuccio v. KFC Nat. Mgmt. Co.,* No. 95-cv-2586, 1996 WL 137637, at *1–2 (E.D. La. Mar. 25, 1996) (rejecting request for discovery of "detailed information as to the financial transactions, income, assets, and liabilities of plaintiff and his wife for the last four years" as relevant to plaintiff's general credibility because there was no authority "supporting extensive financial discovery or the sole purpose of determining *if* one party *might* be able to challenge the general credibility of another"); Underlying Action, ECF No. 118.02 at 18; ECF No. 123 at 10-11.[11]

**The Identity Of The Hackers.** Muzin next asks this Court for permission to go on a fishing expedition to determine who else "likely" hacked Plaintiffs' information. Muzin Mem. at 17. But Mr. Mowbray's documents are not the subject of the Complaint and Muzin is not permitted

---

[11] Muzin's citation to *Thong v. Andre Chreky Salon,* 247 F.R.D. 193, 196 (D.D.C. 2008) for the proposition that discoverable information includes evidence "relevant to the credibility of a party" is inapposite because there the plaintiff served the targeted discovery for false testimony by the defendant in a prior proceeding.

to go on a fishing expedition of Broidy's nonparty associates in the hopes of targeting someone else who may have "had a motive and the means to hack *Broidy's* emails." *Id.* (emphasis added). Moreover, Muzin does not need to speculate.  The Complaint sets forth detailed allegations concerning Defendants and their co-conspirators' responsibility for the hack.  That does not, under the law, give Muzin an excuse to seek wide-ranging discovery of nonparties based on speculation. *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339 (quashing subpoena where "the slim chance of a 'likely benefit' from enforcing these subpoenas further weighs against granting Petitioners' motion" where the "entire premise rests upon nothing more than an *ipse dixit*"); ECF No. 118.02 at 15-17; ECF No. 123 at 16-17.

**Mr. Broidy's Motives In Bringing This Lawsuit.**  Despite Muzin's say-so, there is simply *no evidence whatsoever* that Plaintiffs have an improper motive in bringing this lawsuit: their servers were hacked and their confidential information was disseminated, and Defendants have admitted they obtained and disseminated those emails.  *See, e.g.*, HBB Decl., Ex. 9 at Response No. 9.  And, contrary to Muzin's assertion that Broidy has pursued other "unsuccessful litigation efforts" (Muzin Mem. at 17 n. 7), the Southern District of New York recently granted Plaintiff's leave to amend the complaint.  *Broidy v. Global Risk Advisors, LLC*, No. 1:19-cv-11861-MKV (S.D.N.Y.), ECF 114.  In fact, a whistleblower who was working for the company responsible for hacking Plaintiffs' emails signed a sworn declaration that connects the hacking to Defendants' co-conspirators, just as alleged here.[12]  *Id.* at ECF 116 (FAC ¶ 119, FAC Ex. A). Defendants are not entitled to issue harassing discovery demands to a nonparty under the pretext

---

[12] Muzin's complaint (Muzin Mem. at 17) that Mowbray and Rosenzweig are refusing to produce documents concerning related lawsuits in California (now dismissed) and New York is misguided. Mowbray and Rosenzweig are not parties to those cases, but Broidy is.  And, Broidy has agreed to produce non-publicly available documents regarding those cases to the extent they regard any defendant in those cases and are relevant to the hacking.

of trying to find a claimed improper motive.[13]  *See Mims v. B&J Martin, Inc.*, No. CV 17-07324, 2018 WL 1064411, at *1-3 (E.D. La. Feb. 25, 2018) (granting motion to quash discovery testing whether plaintiff had a financial incentive to fabricate his claim).  *See also* Underlying Action, ECF No. 118.02 at 16-17; ECF No. 123 at 10-11.

Finally, because documents concerning Plaintiffs' advocacy are irrelevant, the request for nonparties to produce such information is clearly not proportional to the needs of the case.  *See Strategic Partners, Inc.*, 2021 WL 4813646, at *14 (C.D. Cal. Aug. 12, 2021) (denying motion to compel responses to interrogatory).

### B.  Muzin's Requests Are Not Relevant To Plaintiffs' Damages

Next, Muzin characterizes 82 of his requests as purportedly related to damages, which he superficially addresses in bullet-point fashion.  *See* Muzin Mem. at 19-20.  Upon scrutiny, however, Muzin does not actually seek damages-related discovery from Mowbray and Rosenzweig, and instead propounds excessive, invasive, irrelevant, and harassing requests into the professional and personal lives of these nonparties.

First, Muzin makes the blanket claim (Muzin Mem. at 20, first bullet) that all 70 requests that purportedly relate to Broidy's advocacy efforts, are somehow also relevant to damages because they will supposedly shed light on Broidy's business relationships and whether those relationships have been damaged. *See also* Appendix A-3.  This is absurd.  Among other reasons: requests seeking documents concerning Mr. Mowbray and the Hamas Sanctions Bill are not related to Mr. Broidy's damages; requests that purportedly will uncover Broidy's motives for speaking

---

[13] Muzin cites *Pietrangelo*, *supra*, to support the proposition that he is entitled to discovery regarding Plaintiffs' improper motives.  Unlike here, though, in that case there was already evidence of an improper motive that was relevant to a viable defense, and so the court permitted discovery for the parties to get more information.

out against Qatar's support of terrorism and filing this lawsuit are not related to damages; and requests related to search warrants executed by federal investigators are not relevant to damages. *See also* Appendix A-3, Entry Nos. 4-37; 42-48, 62, 63-70.  Courts require those seeking discovery to support each request with particularized arguments precisely to prevent parties like Muzin from making deceptive or false blanket assertions about relevance to large swaths of requests.  *See Robinson*, 2010 WL 1948252, at *3.

In place of particularized arguments, Muzin resorts to accusing Mowbray and Rosenzweig of aiding criminal conduct by refusing to produce documents.  Muzin Mem. at 20.  This false *ad hominem* is outrageous, and it is certainly not an argument.  The motion should be denied for this reason alone, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) (discovery denied if aim is to harass), and the Court should sanction Muzin for using this motion as a platform to publicly smear Mowbray and Rosenzweig, just as he has already done with another nonparty.[14] *See* Circinus Proceeding, ECF No. 21 at 20.

Muzin also claims (Muzin Mem. at 20, second and third bullets) that the remaining 12 requests — which seek six years of Mowbray and Rosenzweig's personal and business bank statements, seven years of their diaries and calendars, seven years of call logs on personal or business devices, documents sufficient to show *all* of Mowbray and Rosenzweig's professional and personal contacts, and all travel itineraries and expense reimbursements by Mowbray and Rosenzweig's for trips to the Middle East — are related to Mr. Broidy's damages because they might "inform the state of Broidy's business relations" and might "inform the business dealings

---

[14] *See Givens v. Criswell*, No. CIV.A. 5:08CV25, 2009 WL 3672068, at *19, n.14 (N.D. W. Va. Oct. 29, 2009) (sanctions considered where plaintiff filed motions that left impression that defendant was the subject of an ongoing criminal investigation); *Hewett v. Triple Point Tech.*, No. 3:13-CV-1382 (SRU), 2015 WL 6675529, at *6 (D. Conn. Oct. 30, 2015) (sanctions awarded where "campaign to smear Walsh's credentials and character" clearly "waged in bad faith").

of Broidy's closest associates." *Id.* This is absurd. The "business dealings" of Mowbray have no relevance to Broidy's damages whatsoever. Mowbray's and Rosenzweig's personal calendars, for example, do not "inform the state of Broidy's business relations," whatever that means. Nor does Muzin explain how "the state of Broidy's business relations" shed light on Plaintiff's damages. *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *4–5 (D. Ariz. May 13, 2021) (financials of third party not relevant to plaintiff's damages and not proportional to needs of case). Muzin cannot obtain discovery based on mere speculation and *ipse dixit* that because Mowbray and Rosenzweig are closely associated with Broidy, they somehow "likely" have relevant information about Plaintiffs' business damages. *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339.

At bottom, any information related to Plaintiffs' damages (notwithstanding the fact that these requests do not seek information that actually would be probative of this topic), would be in the possession of Broidy,[15] and "even modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other source." *See Burlodge Ltd. v. Standex Int'l Corp.*, 257 F.R.D. 12, 19 (D.D.C. 2009); *Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339 (quashing subpoena where other less burdensome sources of discovery existed).

### C. Documents Dated Prior To December 1, 2017 Are Not Relevant

Because the first hacking efforts at issue in this case only began in late December 2017, Mowbray and Rosenzweig have reasonably agreed to produce materials created on or after

---

[15] Muzin's cases on discovery into damages provide him no support, as they each dealt with targeted and specific damages discovery on a *plaintiff*, not a nonparty. *Nat'l Cmty. Reinvestment Coalition v. NovaStar Fin., Inc.,* No. 07-CV-861, 2009 WL 10719757, at *2 (D.D.C. July 13, 2009); *Dickerson v. District of Columbia,* No. 09-CV-2213, 2019 WL 6910043, at *5 (D.D.C. Dec. 19, 2019).

December 1, 2017.  HBB Decl., Exs. 4, 5.  Muzin nevertheless claims (Muzin Mem. at 21-23) that discovery of Mowbray and Rosenzweig should pre-date the hack by nearly two years, to January 1, 2016.  Muzin's motion to compel on this ground should be denied.

Once again, Muzin engages in a game of "gotcha" by arguing (Muzin Mem. at 21) Mowbray and Rosenzweig waived that objection because it did not explain the basis for that time limitation in its responses.  In the same paragraph, however, Muzin acknowledges he knows from "Broidy's counsel," who is also Mowbray's and Rosenzweig's counsel, exactly what that basis is. And if there was any confusion, Muzin should have asked to meet and confer as he was required to do under the local rules.

Muzin's substantive arguments are equally meritless.  *First*, Muzin's asserts (Muzin Mem. at 22-23) that a January 2016 date for *all* discovery is required because the hacked emails were created before the hack.  This is the tail wagging the dog.  Mowbray's emails were not hacked, and Rosenzweig has agreed to produce documents and communications concerning the hacking of her Gmail Account to the extent they are responsive to the Rosenzweig Subpoena.  Beyond the emails themselves, however, there is no justification for discovery of Mowbray and Rosenzweig prior to December 2017.

*Second*, Muzin's assertion (Muzin Mem. at 22) that he needs discovery predating December 2017 to challenge Plaintiffs' "reputation and business . . . damages" is flawed for a variety of reasons.  Plaintiffs do not seek reputation damages and Plaintiffs have agreed to produce documents concerning the damages they are seeking.  *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339.  Muzin does not otherwise identify or explain how any subpoena request directed to Mowbray or Rosenzweig would be relevant to Plaintiffs' business damages.  Indeed, Mowbray

26

and Rosenzweig's personal bank statements and calendars have no bearing whatsoever on Plaintiffs' damages.

*Finally*, Muzin asserts (Muzin Mem. at 22-23) that discovery of these nonparties pre-dating December 2017 will "probe whether ***Broidy*** took steps to safeguard his trade secrets." (Emphasis added). Once again, this makes no sense. The Complaint alleges the steps Plaintiffs took to safeguard their information (FAC ¶¶ 286, 312); Plaintiffs have agreed to produce responsive documents; and neither subpoena seeks documents concerning those allegations. Even if they did, discovery of Mowbray or Rosenzweig has no bearing on the steps *Plaintiffs* took to safeguard their trade secrets. "There is simply no reason to burden nonparties when the documents sought are in possession of the party []." *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (D.D.C. 2007).

For all of these reasons, Court should deny the motion seeking pre-December 2017 discovery of Mowbray and Rosenzweig.

## **CONCLUSION**

For the foregoing reasons Mowbray and Rosenzweig respectfully request that the Court deny Muzin's motion to compel in its entirety.

Dated: March 24, 2022

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: /s/ *Henry B. Brownstein*
    Henry B. Brownstein
    D.C. Bar No. 1026042
    1399 New York Avenue, Suite 201
    Washington, D.C. 20005
    Tel.: (202) 760-3400
    hbrownstein@kasowitz.com

    Daniel R. Benson (*pro hac vice*)
    Andrew R. Kurland (*pro hac vice*)
    Jacob Benson (*pro hac vice*)
    1633 Broadway
    Tel.: (212) 506-1700
    New York, New York 11019
    dbenson@kasowitz.com
    akurland@kasowitz.com
    jbenson@kasowitz.com

*Counsel for Joel Mowbray and Robin Rosenzweig*

28

**APPENDIX A**

**APPENDIX A-1**

| | | |
|---|---|---|
| **REQUESTS TO WHICH MOWBRAY AND ROSENZWEIG HAVE AGREED TO RRODUCE RESPONSIVE DOCUMENTS IN WHOLE OR IN PART** | | |
| **No.** | **Req. No.** | **Request** |
| 1. | Mowbray 1 | All communications between You and Defendants, including without limitation audio or video recordings of conversations between You and Muzin that occurred on or about February 27, 2018, March 5, 2018, and March 8, 2018, as well as any documents relating to such communications. |
| 2. | Mowbray 5 | All communications regarding the alleged hacking, including without limitation communications with the following: Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia; or any reporter, as well as any documents relating to such communications. |
| 3. | Mowbray 8 | All documents and communications regarding any attempt to hack or access Your computer, computer systems, network, or email accounts without authorization. |
| 4. | Mowbray 43 | All communications with officials, agents, or representatives of the United States government regarding the alleged hacking, as well as any documents relating to such communications. |
| 5. | Mowbray 44 | All documents that You or Broidy shared with officials, agents, or representatives of the United States government regarding the alleged hacking. |
| 6. | Mowbray 49 | All communications, to the extent not already requested, between You, Your agents, or Your representatives (including without limitation attorneys) and the following individuals or entities, their agents, representatives, affiliates, or affiliated organizations regarding Defendants, Broidy, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking: the United States government, Ron Bonjean, Steve Rabinowitz, Aaron Keyak, David Reaboi, Mike Cernovich, Ed Royce, Ileana Ros-Lehtinen, Jason Torchinsky, Armin Rosen, Shmuley Boteach, David Suissa, Miriam Adelson, Andrew Harrod, Richard Miniter, Mike Makovsky, Lisa Korbatov, Charles Wald, Matt Brooks, Richard Mintz, Allen West, any reporter, Bluelight Strategies, the Hudson Institute, Secure America Now Foundation, the Jewish Institute for National Security of America ("JINSA"), the Washington Institute for Near East Affairs, or any staff, agents, or representatives of the foregoing, as well as any documents relating to such communications. |

APPENDIX A-1

| REQUESTS TO WHICH MOWBRAY AND ROSENZWEIG HAVE AGREED TO RRODUCE RESPONSIVE DOCUMENTS IN WHOLE OR IN PART | | |
|---|---|---|
| No. | Req. No. | Request |
| 7. | Mowbray 50 | All communications with any person, to the extent not already requested, regarding any defendant in the S.D.N.Y. Action, including without limitation Global Risk Advisors LLC, GRA Maven LLC, GRA Quantum LLC, GRA EMEA Limited, GRA Research LLC, Qrypt, Inc., Kevin Chalker, Denis Mandich, Antonio Garcia, and Courtney Chalker, as well as any documents relating to such communications. |
| 8. | Mowbray 51 | All communications, with any person, to the extent not already requested, regarding any defendant in the Benomar New York Action, including without limitation Jamal Benomar, as well as any documents relating to such communications. |
| 9. | Mowbray 55 | All communications with any person regarding Conover & Gould, Mercury Public Affairs, Sphere Consulting, James Courtovich, and BlueFort Public Relations LLC, as well as any documents relating to such communications. |
| 10. | Mowbray 56 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

**APPENDIX A-1**

| 11. | Mowbray 57 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP and Statecraft PLLC, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the State of Qatar or Defendants as well as any documents relating to such communications: |
|---|---|---|

| Author | Publication |
|---|---|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

**APPENDIX A-1**

| No. | Req. No. | Request |
|---|---|---|
| **REQUESTS TO WHICH MOWBRAY AND ROSENZWEIG HAVE AGREED TO RRODUCE RESPONSIVE DOCUMENTS IN WHOLE OR IN PART** | | |
| 12. | Mowbray 67 | All communications with Robin Rosenzweig, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, and the alleged hacking, as well as any documents relating to such communications. |
| 13. | Mowbray 68 | All communications with Erica Hilliard, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, or the alleged hacking, as well as any documents relating to such communications. |
| 14. | Mowbray 77 | All communications with any person, including without limitation Your associates, any member of the media, foreign heads of state, agents or representatives of foreign states, or U.S. government officials (current or former), agents, or representatives regarding the alleged hacking, as well as any documents relating to such communications. |
| 15. | Mowbray 81 | All documents and communications regarding emails sent to or received from the account "LA.Confidential@mail.com," which was registered on February 24, 2018. |
| 16. | Mowbray 82 | All documents and communications regarding the posting of Broidy's emails or other documents on a website hosted by GoDaddy LLC. |
| 17. | Rosenzweig 1 | All communications between You and any person regarding the alleged hacking of Broidy's computer servers and Your email account, including without limitation Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia, as well as any documents relating to such communications, including without limitation all Ankura and Adlumin invoices related to the alleged hacking. |
| 18. | Rosenzweig 3 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |
| 19. | Rosenzweig 4 | All documents and communications regarding the documents obtained or information accessed during the alleged hacking, including without limitation Broidy's business plans and proposals, research supporting those plans and proposals including costs and service projections, information concerning business strategies and opportunities, and contacts for important business relationships. |

### APPENDIX A-1

| REQUESTS TO WHICH MOWBRAY AND ROSENZWEIG HAVE AGREED TO RRODUCE RESPONSIVE DOCUMENTS IN WHOLE OR IN PART | | |
|---|---|---|
| **No.** | **Req. No.** | **Request** |
| 20. | Rosenzweig 5 | All communications that support You contend support Your claim that the alleged hacking of Your Gmail account originated with a "spear phishing" email received in December of 2017, as well as all documents relating to such communications. |
| 21. | Rosenzweig 6 | All documents and communications stored that were made public as a result of the alleged hacking. |
| 22. | Rosenzweig 7 | All documents and communications that were obtained as a result of the alleged hacking. |
| 23. | Rosenzweig 15 | All communications with any person regarding the Defendants, as well as any documents relating to such communications. |
| 24. | Rosenzweig 17 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

**APPENDIX A-1**

| 25. | Rosenzweig 18 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the alleged hacking, the State of Qatar, or Defendants, as well as any documents relating to such communications: |
|-----|----------------|---|

| Author | Publication |
|--------|-------------|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

**APPENDIX A-1**

| REQUESTS TO WHICH MOWBRAY AND ROSENZWEIG HAVE AGREED TO RRODUCE RESPONSIVE DOCUMENTS IN WHOLE OR IN PART | | |
|---|---|---|
| **No.** | **Req. No.** | **Request** |
| 26. | Rosenzweig 22 | All communications with officials, agents, or representatives of the United States government regarding the alleged hacking, as well as any documents relating to such communications. |

**APPENDIX A-2**

| | | |
|---|---|---|
| **REQUESTS MUZIN CLAIMS MOWBRAY AND ROSENZWEIG EITHER IMPERMISSIBLY LIMIT CERTAIN RESPONSES TO INFORMATION "CONCERNING THE HACKING" OR REFUSE TO PRODUCE INFORMATION DIRECTLY RELATED TO THE HACK** | | |
| **No.** | **Request No.** | |
| 1. | Mowbray 2 | All documents and communications that discuss, transmit, attach, disclose, publish, share, or forward any audio or video recordings of conversations between You and Defendants, including without limitation conversations between You and Muzin that occurred on or about February 27, 2018, March 5, 2018, and March 8, 2018. |
| 2. | Mowbray 5 | All communications regarding the alleged hacking, including without limitation communications with the following: Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia; or any reporter, as well as any documents relating to such communications. |
| 3. | Mowbray 6 | Documents sufficient to identify any person that you, your staff, agents, or representatives—or an entity you are affiliated with—have employed, hired, utilized, or otherwise consulted with, whether personally or professionally, for their ability to breach defenses or exploit weaknesses in computer systems or networks. |
| 4. | Mowbray 8 | All documents and communications regarding any attempt to hack or access Your computer, computer systems, network, or email accounts without authorization. |
| 5. | Mowbray 9 | All documents and communications that you allege were obtained from You or Broidy as a result of the alleged hacking. |
| 6. | Mowbray 10 | All documents and communications from You or Broidy that you contend were made public as a result of the alleged hacking. |
| 7. | Mowbray 11 | All media, articles, reports, social media posts, and public statements that You contend relate to documents or information obtained from You or Broidy as a result of the alleged hacking. |
| 8. | Mowbray 12 | All documents and communications obtained from You or Broidy as a result of the alleged hacking that You contend were forged, falsified, or otherwise altered. |
| 9. | Mowbray 13 | All documents and communications demonstrating that any documents identified in Request No. 12 were forged, falsified, or otherwise altered, including original non-falsified versions of the documents. |

APPENDIX A-2

| | REQUESTS MUZIN CLAIMS MOWBRAY AND ROSENZWEIG EITHER IMPERMISSIBLY LIMIT CERTAIN RESPONSES TO INFORMATION "CONCERNING THE HACKING" OR REFUSE TO PRODUCE INFORMATION DIRECTLY RELATED TO THE HACK | |
|---|---|---|
| **No.** | **Request No.** | |
| 10. | Mowbray 49 | All communications, to the extent not already requested, between You, Your agents, or Your representatives (including without limitation attorneys) and the following individuals or entities, their agents, representatives, affiliates, or affiliated organizations regarding Defendants, Broidy, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking: the United States government, Ron Bonjean, Steve Rabinowitz, Aaron Keyak, David Reaboi, Mike Cernovich, Ed Royce, Ileana Ros-Lehtinen, Jason Torchinsky, Armin Rosen, Shmuley Boteach, David Suissa, Miriam Adelson, Andrew Harrod, Richard Miniter, Mike Makovsky, Lisa Korbatov, Charles Wald, Matt Brooks, Richard Mintz, Allen West, any reporter, Bluelight Strategies, the Hudson Institute, Secure America Now Foundation, the Jewish Institute for National Security of America ("JINSA"), the Washington Institute for Near East Affairs, or any staff, agents, or representatives of the foregoing, as well as any documents relating to such communications. |
| 11. | Mowbray 50 | All communications with any person, to the extent not already requested, regarding any defendant in the S.D.N.Y. Action, including without limitation Global Risk Advisors LLC, GRA Maven LLC, GRA Quantum LLC, GRA EMEA Limited, GRA Research LLC, Qrypt, Inc., Kevin Chalker, Denis Mandich, Antonio Garcia, and Courtney Chalker, as well as any documents relating to such communications. |
| 12. | Mowbray 51 | All communications, with any person, to the extent not already requested, regarding any defendant in the Benomar New York Action, including without limitation Jamal Benomar, as well as any documents relating to such communications. |
| 13. | Mowbray 55 | All communications with any person regarding Conover & Gould, Mercury Public Affairs, Sphere Consulting, James Courtovich, and BlueFort Public Relations LLC, as well as any documents relating to such communications. |
| 14. | Mowbray 56 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

APPENDIX A-2

| 15. | Mowbray 57 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP and Statecraft PLLC, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the State of Qatar or Defendants as well as any documents relating to such communications: |
|---|---|---|

| Author | Publication |
|---|---|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

APPENDIX A-2

| | | |
|---|---|---|
| **REQUESTS MUZIN CLAIMS MOWBRAY AND ROSENZWEIG EITHER IMPERMISSIBLY LIMIT CERTAIN RESPONSES TO INFORMATION "CONCERNING THE HACKING" OR REFUSE TO PRODUCE INFORMATION DIRECTLY RELATED TO THE HACK** | | |
| **No.** | **Request No.** | |
| 16. | Mowbray 67 | All communications with Robin Rosenzweig, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, and the alleged hacking, as well as any documents relating to such communications. |
| 17. | Mowbray 68 | All communications with Erica Hilliard, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, or the alleged hacking, as well as any documents relating to such communications. |
| 18. | Mowbray 77 | All communications with any person, including without limitation Your associates, any member of the media, foreign heads of state, agents or representatives of foreign states, or U.S. government officials (current or former), agents, or representatives regarding the alleged hacking, as well as any documents relating to such communications. |
| 19. | Mowbray 81 | All documents and communications regarding emails sent to or received from the account "LA.Confidential@mail.com," which was registered on February 24, 2018. |
| 20. | Mowbray 82 | All documents and communications regarding the posting of Broidy's emails or other documents on a website hosted by GoDaddy LLC. |
| 21. | Rosenzweig 1 | All communications between You and any person regarding the alleged hacking of Broidy's computer servers and Your email account, including without limitation Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia, as well as any documents relating to such communications, including without limitation all Ankura and Adlumin invoices related to the alleged hacking. |
| 22. | Rosenzweig 2 | Documents sufficient to identify any person that you, your staff, agents, or representatives—or an entity you are affiliated with—have employed, hired, utilized, or otherwise consulted with, whether personally or professionally, for their ability to breach defenses or exploit weaknesses in computer systems or networks. |
| 23. | Rosenzweig 3 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |

**APPENDIX A-2**

| REQUESTS MUZIN CLAIMS MOWBRAY AND ROSENZWEIG EITHER IMPERMISSIBLY LIMIT CERTAIN RESPONSES TO INFORMATION "CONCERNING THE HACKING" OR REFUSE TO PRODUCE INFORMATION DIRECTLY RELATED TO THE HACK | | |
|---|---|---|
| **No.** | **Request No.** | |
| 24. | Rosenzweig 4 | All documents and communications regarding the documents obtained or information accessed during the alleged hacking, including without limitation Broidy's business plans and proposals, research supporting those plans and proposals including costs and service projections, information concerning business strategies and opportunities, and contacts for important business relationships. |
| 25. | Rosenzweig 5 | All communications that support You contend support Your claim that the alleged hacking of Your Gmail account originated with a "spear phishing" email received in December of 2017, as well as all documents relating to such communications. |
| 26. | Rosenzweig 6 | All documents and communications stored that were made public as a result of the alleged hacking. |
| 27. | Rosenzweig 7 | All documents and communications that were obtained as a result of the alleged hacking. |
| 28. | Rosenzweig 8 | All documents and communications obtained during the alleged hacking that You contend were forged, falsified, or otherwise altered. |
| 29. | Rosenzweig 9 | All documents and communications demonstrating that any documents identified in Request No. 6 were forged, falsified, or otherwise altered, including original non-falsified versions of the documents. |
| 30. | Rosenzweig 15 | All communications with any person regarding the Defendants, as well as any documents relating to such communications. |
| 31. | Rosenzweig 17 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

APPENDIX A-2

| 32. | Rosenzweig 18 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the alleged hacking, the State of Qatar, or Defendants, as well as any documents relating to such communications: |
|---|---|---|

| Author | Publication |
|---|---|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

APPENDIX A-2

| REQUESTS MUZIN CLAIMS MOWBRAY AND ROSENZWEIG EITHER IMPERMISSIBLY LIMIT CERTAIN RESPONSES TO INFORMATION "CONCERNING THE HACKING" OR REFUSE TO PRODUCE INFORMATION DIRECTLY RELATED TO THE HACK | | |
|---|---|---|
| No. | Request No. | |
| 33. | Rosenzweig 22 | All communications with officials, agents, or representatives of the United States government regarding the alleged hacking, as well as any documents relating to such communications. |

14

**APPENDIX A-3**

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|-----|-------------|---------------------------------------------------------------------|
| 1. | Mowbray 3 | All documents and communications that You contend support your claim that Muzin attempted to pressure or to extort You into forming a professional relationship with him; forming a professional relationship with any entity or individual associated with him; or assisting with any effort on behalf of the State of Qatar. |
| 2. | Mowbray 4 | All audio or video recordings in Your possession, to the extent not already requested, referencing Defendants, Broidy, the State of Qatar, the UAE, or Saudi Arabia. |
| 3. | Mowbray 5 | All communications regarding the alleged hacking, including without limitation communications with the following: Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia; or any reporter, as well as any documents relating to such communications. |
| 4. | Mowbray 7 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |
| 5. | Mowbray 14 | All documents and communications regarding Broidy's or Your advocacy, lobbying, or consulting efforts relating to the State of Qatar or any Qatar-based entity. |
| 6. | Mowbray 15 | All documents and communications related to any consultants, vendors, or other entities working on behalf of the King of Saudi Arabia or the United Arab Emirates, including without limitation DarkMatter. |
| 7. | Mowbray 16 | All documents and communications regarding public statements You or Broidy have made about the State of Qatar, the UAE, Saudi Arabia, their governments, or their relationships with Israel. |
| 8. | Mowbray 17 | All statements You or Broidy have made to any U.S. government official about the State of Qatar, the UAE, or Saudi Arabia, their governments, or their relationships with Israel, including any white papers, affidavits, reports, notes, presentations, or talking points, whether in draft or final form, as well as any documents or communications relating to such statements. |
| 9. | Mowbray 18 | All communications regarding Broidy's or Your own business dealings with the UAE and Saudi Arabia, or any officials, agents, or representatives of those countries, as well as any documents relating to such communications. |

15

### APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|---|---|---|
| 10. | Mowbray 19 | All documents and communications regarding monetary payments or donations made or received by You or Broidy, in connection with Broidy's or Your own advocacy, lobbying, or consulting efforts relating to the State of Qatar, including without limitation monetary payments or donations made by or received from Saudi Arabia or the UAE, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country. |
| 11. | Mowbray 20 | All documents and communications regarding contracts, business deals, or other arrangements of value sought or entered into by You or Broidy as a result of or in connection with Broidy's or Your own advocacy, lobbying, or consulting efforts relating to the State of Qatar. |
| 12. | Mowbray 21 | All documents and communications relating to your receipt of moneys either directly or indirectly from the United Arab Emirates. |
| 13. | Mowbray 22 | All documents and communications relating to your receipt of moneys either directly or indirectly from the Kingdom of Saudi Arabia. |
| 14. | Mowbray 23 | All documents and communications with Crown Prince Mohammed bin Zayed al- Nahyan of the United Arab Emirates. |
| 15. | Mowbray 24 | All documents and communications between you and any member of the Royal Family of the United Arab Emirates. |
| 16. | Mowbray 25 | All documents and communications with Yousef al-Otaiba, Ambassador of the United Arab Emirates to the United States of America. |
| 17. | Mowbray 26 | All documents and communications relating to the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018. |
| 18. | Mowbray 27 | All documents and communications relating to payments of money you facilitated either directly or indirectly to any sponsor of the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018, or any entity affiliated with such sponsor. |
| 19. | Mowbray 28 | All documents and communications relating to any assistance or service you provided to any sponsor of the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018 or any relative or friend of such sponsor, and whether you were compensated or not for such assistance or service. |

APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|-----|-------------|---------------------------------------------------------------------|
| 20. | Mowbray 29 | All communications with President Donald Trump and/or members of President Trump's family; White House staff; Trump presidential campaign staff; Save America PAC staff; America First Action PAC staff; Make America Great Again Action PAC staff; Make America Great Again, Again PAC staff; or Trump Administration transition team members; or the agents or representatives of any of the individuals or organizations identified in this Request, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 21. | Mowbray 30 | All communications with any U.S. Senator or U.S. Congressman (current or former) and/or members of any Senator's or Congressman's staff regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 22. | Mowbray 31 | All communications with any U.S. Cabinet Members (current or former) or their staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 23. | Mowbray 32 | All communications with former Congressman Ed Royce or his staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 24. | Mowbray 33 | All communications with former Congresswoman Ileana Ros-Lehtinen or her staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 25. | Mowbray 34 | All communications with any agent, official, or representative of the government of Saudi Arabia regarding the State of Qatar, including communications between Your attorneys and any such agent, official, representative, or attorney of the agent, official or representative, as well as any documents relating to such communications. |
| 26. | Mowbray 35 | All communications with any agent, official, or representative of the government of the UAE regarding the State of Qatar, including communications between Your attorneys and any such agent, official, representative, or attorney of the agent, official, or representative, as well as any documents relating to such communications. |

APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|-----|-------------|----------------------------------------------------------------------|
| 27. | Mowbray 36 | All communications with George Nader, GS Investment Ltd., or Xiemen Investments Limited, their agents, their representatives, or their attorneys, including communications between Your attorneys and Mr. Nader's, GS Investment Ltd.'s, or Xiemen Investments Limited's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 28. | Mowbray 37 | All communications with Richard Miniter or American Media Institute, their agents, their representatives, or their attorneys, including communications between Broidy's attorneys and Mr. Miniter's or American Media Institute's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. For purposes of this request, Broidy's attorneys include without limitation Latham & Watkins LLP and Boies Schiller Flexner LLP. |
| 29. | Mowbray 38 | All communications with Stephen K. Bannon, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Bannon's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 30. | Mowbray 39 | All communications with Rick Gates, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Gates's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 31. | Mowbray 40 | All communications with Michael Cohen, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Cohen's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 32. | Mowbray 41 | All communications with Tom Barrack, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Barrack's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |

### APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|-----|-------------|---------------------------------------------------------------------|
| 33. | Mowbray 42 | All communications with Lev Parnas, his agents, his representatives, or his attorneys, including communications between Broidy's attorneys and Mr. Parnas's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 34. | Mowbray 46 | All documents and communications relating to the raid conducted by federal investigators at Broidy's office in Los Angeles, California in or around July 2018, relating to the State of Qatar, the UAE, or Saudi Arabia. |
| 35. | Mowbray 47 | All documents and communications regarding any U.S. or foreign investigation of Yours or Broidy's activities relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia by any federal, state, or other regulatory agency. |
| 36. | Mowbray 48 | All communications with Special Counsel Robert Mueller and his investigation team relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents relating to such communications. |
| 37. | Mowbray 49 | All communications, to the extent not already requested, between You, Your agents, or Your representatives (including without limitation attorneys) and the following individuals or entities, their agents, representatives, affiliates, or affiliated organizations regarding Defendants, Broidy, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking: the United States government, Ron Bonjean, Steve Rabinowitz, Aaron Keyak, David Reaboi, Mike Cernovich, Ed Royce, Ileana Ros-Lehtinen, Jason Torchinsky, Armin Rosen, Shmuley Boteach, David Suissa, Miriam Adelson, Andrew Harrod, Richard Miniter, Mike Makovsky, Lisa Korbatov, Charles Wald, Matt Brooks, Richard Mintz, Allen West, any reporter, Bluelight Strategies, the Hudson Institute, Secure America Now Foundation, the Jewish Institute for National Security of America ("JINSA"), the Washington Institute for Near East Affairs, or any staff, agents, or representatives of the foregoing, as well as any documents relating to such communications. |

**APPENDIX A-3**

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|---|---|---|
| 38. | Mowbray 50 | All communications with any person, to the extent not already requested, regarding any defendant in the S.D.N.Y. Action, including without limitation Global Risk Advisors LLC, GRA Maven LLC, GRA Quantum LLC, GRA EMEA Limited, GRA Research LLC, Qrypt, Inc., Kevin Chalker, Denis Mandich, Antonio Garcia, and Courtney Chalker, as well as any documents relating to such communications. |
| 39. | Mowbray 51 | All communications, with any person, to the extent not already requested, regarding any defendant in the Benomar New York Action, including without limitation Jamal Benomar, as well as any documents relating to such communications. |
| 40. | Mowbray 52 | All non-privileged communications relating to the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 41. | Mowbray 53 | All communications that discuss, transmit, attach, disclose, publish, share, or forward pleadings or other documents filed in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action to the United Arab Emirates and the Kingdom of Saudi Arabia. |
| 42. | Mowbray 54 | All communications, with any person, regarding the Qatar Investment Authority, as well as any documents relating to such communications. |
| 43. | Mowbray 56 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |
| 44. | Mowbray 58 | All non-privileged communications regarding any document produced by any party or third party in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 45. | Mowbray 60 | All documents and communications regarding payments, donations, gifts, grants, disbursements, or contributions—including without limitation contributions to PACs, Hybrid PACs, Super PACs, 501(c)(3) organizations, or 501(c)(4) organizations—received by or made by You or Broidy, or at Your or Broidy's direction, in relation to any federal political campaign. |
| 46. | Mowbray 61 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |

APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
|-----|-------------|---------------------------------------------------------------------|
| 47. | Mowbray 62 | All documents and communications regarding Yours or Broidy's involvement with proposals, pitches, bids, or solicitations to Saudi Arabia or the UAE. |
| 48. | Mowbray 67 | All communications with Robin Rosenzweig, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, and the alleged hacking, as well as any documents relating to such communications. |
| 49. | Mowbray 68 | All communications with Erica Hilliard, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, or the alleged hacking, as well as any documents relating to such communications. |
| 50. | Mowbray 74 | All travel itineraries that reflect trips that you took to the Middle East for business from January 1, 2016, to the present. |
| 51. | Mowbray 75 | All expense reimbursements submitted by you, or someone acting on Your behalf, to any person that relate to trips that you took to the Middle East for business from January 1, 2016, to the present. |
| 52. | Mowbray 76 | All documents and communications relating to any conferences you organized, participated in, or financed, involving the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia. |
| 53. | Mowbray 77 | All communications with any person, including without limitation Your associates, any member of the media, foreign heads of state, agents or representatives of foreign states, or U.S. government officials (current or former), agents, or representatives regarding the alleged hacking, as well as any documents relating to such communications. |
| 54. | Mowbray 78 | All documents and communications regarding a memorandum authored by Jason Torchinsky concerning work that Stonington did for the State of Qatar. |
| 55. | Mowbray 79 | All documents and communications regarding Broidy's or Your own advocacy, lobbying, or consulting efforts on behalf of Saudi Arabia or the UAE, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country, relating to the State of Qatar. |
| 56. | Mowbray 80 | All communications with any person or entity that performed any advocacy, consulting, or lobbying work in the United States relating to the UAE, Saudi Arabia, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country, as well as any documents relating to such communications. |

APPENDIX A-3

| **REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY** |
|---|---|---|
| **No.** | **Request No.** | |
| 57. | Rosenzweig 3 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |
| 58. | Rosenzweig 10 | All communications between You and any person regarding Broidy's advocacy, lobbying or consulting efforts relating to the State of Qatar or any Qatar-based entity, as well as any documents relating to such communications. |
| 59. | Rosenzweig 11 | All documents and communications regarding Broidy's advocacy, lobbying, or consulting efforts on behalf of Saudi Arabia, the UAE, or any individuals or entities—including without limitation nonprofit organizations, think tanks, and media organizations—that received funding from either country, relating to the State of Qatar. |
| 60. | Rosenzweig 12 | All documents and communications related to any consultants, vendors, or other entities working on behalf of the King of Saudi Arabia or the United Arab Emirates, including without limitation DarkMatter. |
| 61. | Rosenzweig 13 | All communications with George Nader, GS Investment Ltd., or Xiemen Investments Limited, their agents, their representatives, or their attorneys, including communications between Broidy (including his attorneys) and Mr. Nader's, GS Investment Ltd.'s, Xiemen Investments Limited's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 62. | Rosenzweig 14 | All communications with Richard Miniter or American Media Institute, their agents, their representatives, or their attorneys, including communications between Broidy's attorneys and Mr. Miniter's or American Media Institute's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 63. | Rosenzweig 16 | All communications between You and any person regarding Broidy's business dealings with the UAE and Saudi Arabia, or any officials, agents, or representatives of those countries, as well as any documents relating to such communications. |
| 64. | Rosenzweig 17 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

**APPENDIX A-3**

| 65. | Rosenzweig 18 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the alleged hacking, the State of Qatar, or Defendants, as well as any documents relating to such communications: |
|---|---|---|

| Author | Publication |
|---|---|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

APPENDIX A-3

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO MR. BROIDY'S PURPORTED ADVOCACY |
| --- | --- | --- |
| 66. | Rosenzweig 20 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |
| 67. | Rosenzweig 21 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |
| 68. | Rosenzweig 24 | All non-privileged communications relating to the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 69. | Rosenzweig 25 | All communications that discuss, transmit, attach, disclose, publish, share, or forward pleadings or other documents filed in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action to the United Arab Emirates and the Kingdom of Saudi Arabia. |
| 70. | Rosenzweig 26 | All non-privileged communications regarding any document produced by any party or third party in the California Action. |

### APPENDIX A-4

| No. | Request No. | REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES |
|-----|-------------|------------------------------------------------|
| 1. | Mowbray 3 | All documents and communications that You contend support your claim that Muzin attempted to pressure or to extort You into forming a professional relationship with him; forming a professional relationship with any entity or individual associated with him; or assisting with any effort on behalf of the State of Qatar. |
| 2. | Mowbray 4 | All audio or video recordings in Your possession, to the extent not already requested, referencing Defendants, Broidy, the State of Qatar, the UAE, or Saudi Arabia. |
| 3. | Mowbray 5 | All communications regarding the alleged hacking, including without limitation communications with the following: Broidy; Ankura Consulting Group LLC or any related entities; Luke Tenery; Daron Hartvigsen; Christopher Harvey; Adlumin Inc., or any related entities or individuals; officials, agents, and representatives of the UAE; officials, agents, and representatives of Saudi Arabia; or any reporter, as well as any documents relating to such communications. |
| 4. | Mowbray 7 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |
| 5. | Mowbray 14 | All documents and communications regarding Broidy's or Your advocacy, lobbying, or consulting efforts relating to the State of Qatar or any Qatar-based entity. |
| 6. | Mowbray 15 | All documents and communications related to any consultants, vendors, or other entities working on behalf of the King of Saudi Arabia or the United Arab Emirates, including without limitation DarkMatter. |
| 7. | Mowbray 16 | All documents and communications regarding public statements You or Broidy have made about the State of Qatar, the UAE, Saudi Arabia, their governments, or their relationships with Israel. |
| 8. | Mowbray 17 | All statements You or Broidy have made to any U.S. government official about the State of Qatar, the UAE, or Saudi Arabia, their governments, or their relationships with Israel, including any white papers, affidavits, reports, notes, presentations, or talking points, whether in draft or final form, as well as any documents or communications relating to such statements. |
| 9. | Mowbray 18 | All communications regarding Broidy's or Your own business dealings with the UAE and Saudi Arabia, or any officials, agents, or representatives of those countries, as well as any documents relating to such communications. |

### APPENDIX A-4

| No. | Request No. | |
|---|---|---|
|  | **REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES** | |
| 10. | Mowbray 19 | All documents and communications regarding monetary payments or donations made or received by You or Broidy, in connection with Broidy's or Your own advocacy, lobbying, or consulting efforts relating to the State of Qatar, including without limitation monetary payments or donations made by or received from Saudi Arabia or the UAE, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country. |
| 11. | Mowbray 20 | All documents and communications regarding contracts, business deals, or other arrangements of value sought or entered into by You or Broidy as a result of or in connection with Broidy's or Your own advocacy, lobbying, or consulting efforts relating to the State of Qatar. |
| 12. | Mowbray 21 | All documents and communications relating to your receipt of moneys either directly or indirectly from the United Arab Emirates. |
| 13. | Mowbray 22 | All documents and communications relating to your receipt of moneys either directly or indirectly from the Kingdom of Saudi Arabia. |
| 14. | Mowbray 23 | All documents and communications with Crown Prince Mohammed bin Zayed al- Nahyan of the United Arab Emirates. |
| 15. | Mowbray 24 | All documents and communications between you and any member of the Royal Family of the United Arab Emirates. |
| 16. | Mowbray 25 | All documents and communications with Yousef al-Otaiba, Ambassador of the United Arab Emirates to the United States of America. |
| 17. | Mowbray 26 | All documents and communications relating to the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018. |
| 18. | Mowbray 27 | All documents and communications relating to payments of money you facilitated either directly or indirectly to any sponsor of the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018, or any entity affiliated with such sponsor. |
| 19. | Mowbray 28 | All documents and communications relating to any assistance or service you provided to any sponsor of the Palestinian International Terrorism Support Prevention Act of 2017, H.R. 2712, 115th Congress, 2017-2018 or any relative or friend of such sponsor, and whether you were compensated or not for such assistance or service. |

APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| **No.** | **Request No.** | |
| 20. | Mowbray 29 | All communications with President Donald Trump and/or members of President Trump's family; White House staff; Trump presidential campaign staff; Save America PAC staff; America First Action PAC staff; Make America Great Again Action PAC staff; Make America Great Again, Again PAC staff; or Trump Administration transition team members; or the agents or representatives of any of the individuals or organizations identified in this Request, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 21. | Mowbray 30 | All communications with any U.S. Senator or U.S. Congressman (current or former) and/or members of any Senator's or Congressman's staff regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 22. | Mowbray 31 | All communications with any U.S. Cabinet Members (current or former) or their staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 23. | Mowbray 32 | All communications with former Congressman Ed Royce or his staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 24. | Mowbray 33 | All communications with former Congresswoman Ileana Ros-Lehtinen or her staff, agents, or representatives regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 25. | Mowbray 34 | All communications with any agent, official, or representative of the government of Saudi Arabia regarding the State of Qatar, including communications between Your attorneys and any such agent, official, representative, or attorney of the agent, official or representative, as well as any documents relating to such communications. |
| 26. | Mowbray 35 | All communications with any agent, official, or representative of the government of the UAE regarding the State of Qatar, including communications between Your attorneys and any such agent, official, representative, or attorney of the agent, official, or representative, as well as any documents relating to such communications. |

**APPENDIX A-4**

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| **No.** | **Request No.** | |
| 27. | Mowbray 36 | All communications with George Nader, GS Investment Ltd., or Xiemen Investments Limited, their agents, their representatives, or their attorneys, including communications between Your attorneys and Mr. Nader's, GS Investment Ltd.'s, or Xiemen Investments Limited's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 28. | Mowbray 37 | All communications with Richard Miniter or American Media Institute, their agents, their representatives, or their attorneys, including communications between Broidy's attorneys and Mr. Miniter's or American Media Institute's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. For purposes of this request, Broidy's attorneys include without limitation Latham & Watkins LLP and Boies Schiller Flexner LLP. |
| 29. | Mowbray 38 | All communications with Stephen K. Bannon, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Bannon's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 30. | Mowbray 39 | All communications with Rick Gates, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Gates's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 31. | Mowbray 40 | All communications with Michael Cohen, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Cohen's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 32. | Mowbray 41 | All communications with Tom Barrack, his agents, his representatives, or his attorneys, including communications between Your attorneys and Mr. Barrack's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |

APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| No. | Request No. | |
| 33. | Mowbray 42 | All communications with Lev Parnas, his agents, his representatives, or his attorneys, including communications between Broidy's attorneys and Mr. Parnas's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 34. | Mowbray 46 | All documents and communications relating to the raid conducted by federal investigators at Broidy's office in Los Angeles, California in or around July 2018, relating to the State of Qatar, the UAE, or Saudi Arabia. |
| 35. | Mowbray 47 | All documents and communications regarding any U.S. or foreign investigation of Yours or Broidy's activities relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia by any federal, state, or other regulatory agency. |
| 36. | Mowbray 48 | All communications with Special Counsel Robert Mueller and his investigation team relating to the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents relating to such communications. |
| 37. | Mowbray 49 | All communications, to the extent not already requested, between You, Your agents, or Your representatives (including without limitation attorneys) and the following individuals or entities, their agents, representatives, affiliates, or affiliated organizations regarding Defendants, Broidy, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking: the United States government, Ron Bonjean, Steve Rabinowitz, Aaron Keyak, David Reaboi, Mike Cernovich, Ed Royce, Ileana Ros-Lehtinen, Jason Torchinsky, Armin Rosen, Shmuley Boteach, David Suissa, Miriam Adelson, Andrew Harrod, Richard Miniter, Mike Makovsky, Lisa Korbatov, Charles Wald, Matt Brooks, Richard Mintz, Allen West, any reporter, Bluelight Strategies, the Hudson Institute, Secure America Now Foundation, the Jewish Institute for National Security of America ("JINSA"), the Washington Institute for Near East Affairs, or any staff, agents, or representatives of the foregoing, as well as any documents relating to such communications. |

### APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| No. | Request No. | |
| 38. | Mowbray 50 | All communications with any person, to the extent not already requested, regarding any defendant in the S.D.N.Y. Action, including without limitation Global Risk Advisors LLC, GRA Maven LLC, GRA Quantum LLC, GRA EMEA Limited, GRA Research LLC, Qrypt, Inc., Kevin Chalker, Denis Mandich, Antonio Garcia, and Courtney Chalker, as well as any documents relating to such communications. |
| 39. | Mowbray 51 | All communications, with any person, to the extent not already requested, regarding any defendant in the Benomar New York Action, including without limitation Jamal Benomar, as well as any documents relating to such communications. |
| 40. | Mowbray 52 | All non-privileged communications relating to the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 41. | Mowbray 53 | All communications that discuss, transmit, attach, disclose, publish, share, or forward pleadings or other documents filed in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action to the United Arab Emirates and the Kingdom of Saudi Arabia. |
| 42. | Mowbray 54 | All communications, with any person, regarding the Qatar Investment Authority, as well as any documents relating to such communications. |
| 43. | Mowbray 56 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |
| 44. | Mowbray 58 | All non-privileged communications regarding any document produced by any party or third party in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 45. | Mowbray 59 | All documents and communications regarding payments, distributions, donations, or disbursements that You made to or received from, or on behalf of, Broidy. |
| 46. | Mowbray 60 | All documents and communications regarding payments, donations, gifts, grants, disbursements, or contributions— including without limitation contributions to PACs, Hybrid PACs, Super PACs, 501(c)(3) organizations, or 501(c)(4) organizations—received by or made by You or Broidy, or at Your or Broidy's direction, in relation to any federal political campaign. |

## APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES |||
|---|---|---|
| **No.** | **Request No.** | |
| 47. | Mowbray 61 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |
| 48. | Mowbray 62 | All documents and communications regarding Yours or Broidy's involvement with proposals, pitches, bids, or solicitations to Saudi Arabia or the UAE. |
| 49. | Mowbray 63 | All documents and communications relating to any financial transactions or exchanges of anything of value, whether directly or indirectly, between You and Broidy, Circinus Worldwide, Threat Deterrence Capital, George Nader, GS Investment Ltd., or Xiemen Investments Limited. |
| 50. | Mowbray 64 | All documents and communications relating to any financial transactions or exchanges of anything of value, whether directly or through an intermediary, between Broidy and Circinus Worldwide, Threat Deterrence Capital, Richard Miniter, or American Media Institute. |
| 51. | Mowbray 65 | All documents and communications relating to financial transactions, whether direct or indirect, between You and Broidy or any Broidy-affiliated entities. |
| 52. | Mowbray 66 | All documents and communications referencing or establishing an employment relationship between You and another individual or entity. |
| 53. | Mowbray 67 | All communications with Robin Rosenzweig, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, and the alleged hacking, as well as any documents relating to such communications. |
| 54. | Mowbray 68 | All communications with Erica Hilliard, or her staff, agents, or representatives, regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, or the alleged hacking, as well as any documents relating to such communications. |
| 55. | Mowbray 69 | All bank statements for personal and business accounts belonging to You between January 1, 2016, and the present. |
| 56. | Mowbray 70 | All bank statements and financial statements for business accounts in the name of any entity in which you have majority ownership interest, either directly or indirectly ownership interest between January 1, 2016, and the present. |
| 57. | Mowbray 71 | Documents sufficient to show your call history from January 1, 2016, to the present for any personal or business phone numbers utilized by you, including without limitation each of your mobile devices. |
| 58. | Mowbray 72 | Copies of all Your diaries and calendars for the years 2016 to the present. |

**APPENDIX A-4**

| **REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES** |
|---|---|---|
| **No.** | **Request No.** | |
| 59. | Mowbray 73 | All contact lists, address books, rolodexes, or similar documents that identify the names and contact information for Your professional and personal contacts. |
| 60. | Mowbray 74 | All travel itineraries that reflect trips that you took to the Middle East for business from January 1, 2016, to the present. |
| 61. | Mowbray 75 | All expense reimbursements submitted by you, or someone acting on Your behalf, to any person that relate to trips that you took to the Middle East for business from January 1, 2016, to the present. |
| 62. | Mowbray 76 | All documents and communications relating to any conferences you organized, participated in, or financed, involving the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia. |
| 63. | Mowbray 77 | All communications with any person, including without limitation Your associates, any member of the media, foreign heads of state, agents or representatives of foreign states, or U.S. government officials (current or former), agents, or representatives regarding the alleged hacking, as well as any documents relating to such communications. |
| 64. | Mowbray 78 | All documents and communications regarding a memorandum authored by Jason Torchinsky concerning work that Stonington did for the State of Qatar. |
| 65. | Mowbray 79 | All documents and communications regarding Broidy's or Your own advocacy, lobbying, or consulting efforts on behalf of Saudi Arabia or the UAE, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country, relating to the State of Qatar. |
| 66. | Mowbray 80 | All communications with any person or entity that performed any advocacy, consulting, or lobbying work in the United States relating to the UAE, Saudi Arabia, or any individuals or entities—including but not limited to nonprofit organizations, think tanks, and media organizations—that received funding from either country, as well as any documents relating to such communications. |
| 67. | Rosenzweig 3 | All communications with Delon Cheng regarding Defendants, the alleged hacking, the State of Qatar, the United Arab Emirates, or the Kingdom of Saudi Arabia, as well as any documents related to such communications. |
| 68. | Rosenzweig 10 | All communications between You and any person regarding Broidy's advocacy, lobbying or consulting efforts relating to the State of Qatar or any Qatar-based entity, as well as any documents relating to such communications. |

APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| **No.** | **Request No.** | |
| 69. | Rosenzweig 11 | All documents and communications regarding Broidy's advocacy, lobbying, or consulting efforts on behalf of Saudi Arabia, the UAE, or any individuals or entities—including without limitation nonprofit organizations, think tanks, and media organizations—that received funding from either country, relating to the State of Qatar. |
| 70. | Rosenzweig 12 | All documents and communications related to any consultants, vendors, or other entities working on behalf of the King of Saudi Arabia or the United Arab Emirates, including without limitation DarkMatter. |
| 71. | Rosenzweig 13 | All communications with George Nader, GS Investment Ltd., or Xiemen Investments Limited, their agents, their representatives, or their attorneys, including communications between Broidy (including his attorneys) and Mr. Nader's, GS Investment Ltd.'s, Xiemen Investments Limited's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 72. | Rosenzweig 14 | All communications with Richard Miniter or American Media Institute, their agents, their representatives, or their attorneys, including communications between Broidy's attorneys and Mr. Miniter's or American Media Institute's agents, representatives, or attorneys, regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications. |
| 73. | Rosenzweig 16 | All communications between You and any person regarding Broidy's business dealings with the UAE and Saudi Arabia, or any officials, agents, or representatives of those countries, as well as any documents relating to such communications. |
| 74. | Rosenzweig 17 | All communications with Broidy, his agents, or his representatives, including without limitation lawyers at Boies Schiller Flexner LLP, regarding Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking, as well as any documents relating to such communications. |

**APPENDIX A-4**

| 75. | Rosenzweig 18 | All communications between You, Your agents, or representatives, including without limitation lawyers at Boies Schiller Flexner LLP, and members of the press, or their staff, agents, or representatives, including without limitation the following, regarding the alleged hacking, the State of Qatar, or Defendants, as well as any documents relating to such communications: |
|---|---|---|

| Author | Publication |
|---|---|
| Bradley Klapper | AP |
| Desmond Butler | AP |
| Tom LoBianco | AP |
| Suzanne Kianpour | BBC News |
| David Voreacos | Bloomberg |
| Eli Lake | Bloomberg |
| Zachary R. Mider | Bloomberg |
| Kevin Collier | Buzzfeed News |
| Jessica Schulberg | Huffington Post |
| Maxwell Strachan | Huffington Post |
| Shmuley Boteach | Jerusalem Post |
| Ben Wieder | McClatchy |
| Kevin G. Hall | McClatchy |
| Peter Stone | McClatchy |
| Dan Friedman | Mother Jones |
| Paul Campos | New York Magazine |
| David D. Kirkpatrick | New York Times |
| Jim Rutenberg | New York Times |
| Kenneth P. Vogel | New York Times |
| Maggie Haberman | New York Times |
| Mark Mazzetti | New York Times |
| Rebecca R. Ruiz | New York Times |
| Ronan Farrow | New Yorker |
| Greg Price | Newsweek |
| David Kirkpatrick | NPR |
| Terry Gross | NPR |
| Alex Isenstadt | Politico |
| Andy Kroll | Rolling Stone |
| Armin Rosen | Tablet Magazine |
| Betsy Woodruff | The Daily Beast |
| Justin Glawe | The Daily Beast |
| Alex Emmons | The Intercept |
| Ryan Grim | The Intercept |
| Aruna Viswanatha | Wall Street Journal |
| Bradley Hope | Wall Street Journal |
| Joe Palazzolo | Wall Street Journal |
| Julie Bykowicz | Wall Street Journal |
| Michael Rothfeld | Wall Street Journal |
| Rebecca Ballhaus | Wall Street Journal |
| Tom Wright | Wall Street Journal |
| Beth Reinhard | Washington Post |
| Carol D. Leonnig | Washington Post |
| Devin Barrett | Washington Post |
| Ellen Nakashima | Washington Post |
| Emma Brown | Washington Post |
| Josh Dawsey | Washington Post |
| Karen DeYoung | Washington Post |
| Paul Waldman | Washington Post |
| Tom Hamburger | Washington Post |

APPENDIX A-4

| REQUESTS MUZIN CLAIMS ARE RELATED TO DAMAGES | | |
|---|---|---|
| **No.** | **Request No.** | |
| 76. | Rosenzweig 19 | All documents and communications regarding payments, distributions, donations, or disbursements that You made on behalf of or received from Broidy. |
| 77. | Rosenzweig 20 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |
| 78. | Rosenzweig 21 | All contracts, agreements, pitches, proposals, or bids regarding Broidy, Defendants, the State of Qatar, the UAE, or Saudi Arabia. |
| 79. | Rosenzweig 23 | Documents sufficient to show your call history from January 1, 2016, to the present for any personal or business phone numbers utilized by you, including without limitation each of your mobile devices. |
| 80. | Rosenzweig 24 | All non-privileged communications relating to the California Action, the Benomar New York Action, or the S.D.N.Y. Action. |
| 81. | Rosenzweig 25 | All communications that discuss, transmit, attach, disclose, publish, share, or forward pleadings or other documents filed in this Action, the California Action, the Benomar New York Action, or the S.D.N.Y. Action to the United Arab Emirates and the Kingdom of Saudi Arabia. |
| 82. | Rosenzweig 26 | All non-privileged communications regarding any document produced by any party or third party in the California Action. |